*811 EN BANC:
The Joint Legislative Committee of the Legislature of the State of Louisiana, created by House Concurrent Resolution No. 54 of the Extraordinary Session of the Louisiana Legislature of 1964, through its Committee Chairman, Senator Adrian G. Duplantier, brings this application for remedial writs of certiorari and/or review, and we have granted the writs to review certain rulings of the Nineteenth Judicial District Court involving the actions entitled as captioned herein.
During the Extraordinary Session of the Legislature of Louisiana of 1964, House Concurrent Resolution No. 54 [3] was adopted wherein a joint legislative committee was established. This committee was directed and empowered to make an investigation of the letting of contracts for the erection and construction of certain public buildings by the State Department and/or Board of Education.
For the purpose of brevity, the Joint Committee of the Legislature created by the House Concurrent Resolution No. 54 will be referred to simply as the Committee; A. B. Broussard, Jr., as Broussard; Miss Veda Pinell as Pinell; ASP, Incorporated as ASP; and the Capital Bank & Trust Company as Bank.
*812 On January 6, 1965, the Committee, in furtherance of the purposes for which it was created, issued a subpoena to Broussard and to Pinell, directing each of them to appear before the Committee on January 13, 1965. The subpoenas[4] were identical, and in obedience to the subpoenas, both Broussard and Pinell appeared before the Committee, accompanied by their counsel, and when asked certain questions by the Committee, each, in turn, refused to answer the questions on the ground that the questions were “outside of the scope of the inquiry as provided by the concurrent resolution * *
After Broussard and Pinell refused to answer certain questions asked by the Committee, the Committee filed separate summary proceedings[5] for contempt of the Committee naming these two witnesses as defendants. The Committee prayed for and obtained a rule nisi ordering the two witnesses, defendants Broussard and Pinell, to show cause why they should not be adjudged guilty of contempt of the Committee for failure to answer the questions propounded by the Committee.
Each defendant answered the rule, setting forth the following reasons why they should not be adjudged in contempt of the Committee. These reasons are: “ * * * that the information sought was not pertinent to the investigation, was an invasion of privacy and constituted and unlawful search and seizure of defendant’s business and personal affairs.”
Hearing was had on the rule nisi on February 23, 1965, the return date fixed therefor by the court. At the conclusion of the hearing, the court recalled and set aside the rule nisi previously issued and dismissed the plaintiff’s suit. The essence of the lower court’s holdings, in dismissing the plaintiff’s suit, was that the only proceeding for contempt that could be filed in district court for contempt of the Committee was that provided for in LSA-R.S. 24:4-6.
On February 3, 1965, the Committee issued a subpoena and a subpoena duces tecum to the Capital Bank & Trust Company, directing it as follows:
“(to) make available to said committee at the same time and place the following: All documents of any nature whatsoever relating to any business transactions with and banking by a corporation named A.S.P., Inc., including bank statements, copies of corporate resolutions and signature cards.”
On February 9, 1965, ASP filed suit in the district court against the Bank and obtained a temporary restraining order prohibiting the said Bank from complying with the subpoena and the subpoena duces tecum issued by the Committee.
The grounds urged by ASP for the issuance of a temporary restraining order, etc., were: (1) That the evidence sought is be *813 yond the scope of authority of the Committee; (2) That to deliver such records of ASP to the Committee by the Bank -would be an invasion of the privacy of its business and that of its stockholders; and (3) That the production of such records may result in the records being open for public inspection which could and will cause irreparable injury and damages to ASP, its business and stockholders.
ASP prayed for a temporary restraining order, a rule to issue to the Bank to show cause why a temporary injunction should not issue, and ultimately that a permanent injunction issue. The temporary restraining order issued on the face of the papers upon ASP furnishing bond in the amount of $500.
The Committee filed an intervention in that proceeding and sought the dissolution of the restraining order and opposed the demands of ASP on the ground that the evidence sought to be obtained is directly related to its investigation as authorized by the concurrent resolution.
ASP then filed exceptions of no right and no cause of action to the petition of intervention.
After hearing the matter, the trial court refused to recall the temporary restraining order, and rather than issue a temporary injunction, it has, by successive orders, extended and continued in force the said temporary restraining order, prohibiting the Bank from complying with the subpoena and subpoena duces tecum issued by the Committee.
The trial court assigned as its reason for continuing the temporary restraining order that the subpoena duces tecum was too broad and that it should be particularized.
We have before us in the Broussard and Pinell cases the narrow question of whether the Committee may institute contempt proceedings in a State court under the power and authority conferred upon it by the House Concurrent Resolution quoted in footnote 3, supra. In the ASP case, we have the question of whether the subpoena duces tecum is too broad. The merits of the reasons stated by the defendants for refusing to answer certain questions are not before us because these have not been passed on by the lower court.
We believe the following basic principles of our form of government should be noted and kept in mind in consideration of this matter. Our constitution provides in Article II, Section 1, LSA — “The powers of the government of the State of Louisiana shall be divided into three distinct departments— legislative, executive, and judicial.” And, Section 2 provides: “No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.”
 It is universally recognized that with the power to legislate there is inherent in the Legislature the power to conduct investigations, and that these investigations should be conducted solely as an aid to its consideration and determination of prospective legislation. The right of inquiry and investigation may be exercised by it as a body of the whole legislature, or the Legislature may delegate its investigative powers to a committee of less than the whole of the Legislature.[6]
*814 In furtherance of the Legislature’s right to investigate, the Legislature, or a committee designed by it, has the unquestionable right to require the attendance of anyone from whom it desires to obtain pertinent information. This right is exercised through the power of the subpoena and the subpoena duces tecum.[7]
In the exercise of the power of subpoena and subpoena duces tecum, the Legislature would be helpless and ineffective to command compliance with its order unless it has the power to punish for contempt or a method of instituting contempt proceedings. Equally inherent, then, with the power of subpoena is the power of the Legislature to punish for contempt.[8]
The broad and non-exclusive right to punish for contempt is provided in Article III, Section 11 of the Constitution of Louisiana.[9] In addition to the constitutional provision, there is a statutory provision made for the punishment of contempt of the legislature or any committee constituted by it. This is found in LSA-R.S. 24:4-6. This too is non-exclusive. LSA-R.S. 24:4 — 6 is the State’s *815 counterpart of the statutory contempt procedure provided by Congress in 2 U.S.C. § 192.
An additional contempt procedure is provided in the Resolution set forth in footnote 3 supra.[10]
The lower court ruled that the only mode, method or procedure available for instituting contempt proceedings against defendants Broussard and Pinell was that provided for by LSA-R.S. 24:4-6[11]
The power of the Legislature to punish for contempt was not in any way or manner impaired, delimited or restricted by the enactment of LSA-R.S. 24:4-6. Any person who is in contempt of the legislature may he punished by the House or Senate, which ever one the contempt was committed against, and the same act will give rise to a prosecution under the provisions of LSA-R.S. 24:4-6. The one act may be a statutory offense under the penal clause of the statute and also a violation of the inherent authority of the Legislature.
What the Legislature provided in the House Concurrent Resolution, footnote 3 supra, was an additional means of punishing a contempt of the authority of the Legislature, and defined therein the act that would constitute a contempt, namely: “ * * * refusal to testify, produce any books, documents, papers or records, * * *, or any act of disrespect of or disorderly or contemptuous behavior * * Then, the same act may be a violation of a statute and also be a contempt of the authority of the Legislature.[12]
*816 The Concurrent Resolution delegated authority to the duly constituted Committee to institute, for contempt of the authority of the Legislature, proceedings in a court of law and provided, by reference, the punishment for such contemptuous conduct and action. Accordingly, we hold that this Committee has the right, power and authority to proceed by rule against the defendants.
We address ourselves now to the objections raised to the subpoena duces tecum. Unquestionably, the Committee has the power and the authority to issue subpoenas duces tecum for the production before it of any books, papers, documents and records germane to the subject of its investigation. The lower court did not question the authority of the Committee, but rather held that the subpoena duces tecum was too broad.
The Fourth Amendment to the U. S. Constitution guarantees against unreasonable searches and seizures, and this safeguard of the rights of individuals finds application to subpoenas issued by legislative investigating committees as it does to judicial or extra-judicial proceedings. However, we must recognize the limitation of the judiciary to interfere in legislative investigations. The committee system of inquiry, in order to maintain a separation of powers, remain pretty much on its own. The propriety of investigations has long been recognized and infrequently curbed by the courts. The only excuse or pretense which a court has for interfering with an investigation of any subject that properly addresses itself to the legislative function of the legislature is to safeguard the constitutional rights of individuals who are summoned before a legislative committee to give testimony or to bare personal and private records that have no appropriateness to the scope of the inquiry.
There is no evidence before the court on which we can ground a determination that the subpoena duces te-cum was too broad, or that the private papers and documents were not pertinent to the subject of inquiry. Whether these papers and documents are private, personal records is not the true test, but rather whether these records are within the scope of the inquiry and investigation; it is that quality of the records that determines the reasonableness of the subpoena.[13]
Accordingly, the ruling and/or judgment of the trial court in the Committee v. Broussard, No. 105,293, and the Committee v. Pinell, No. 105,295, on the docket of the Nineteenth Judicial District Court of East Baton Rouge Parish, is annulled and, set aside, and the trial court is ordered to proceed with the contempt proceedings in accordance with law and the rulings of the court herein; and in the matter of ASP, Incorporated v. Capital Bank & Trust Co., No. 105,145, on the docket of said court, in which the Committee intervened, there is judgment here *817 in dismissing this suit. ASP, Incorporated, A. B. Broussard, Jr., and Miss Veda Pinell are to pay all court costs in this court and the trial court.
Reversed and remanded in part; and reversed and rendered in part.

. The pertinent portion of House Concurrent Resolution No. 64 is as follows:
“A CONCURRENT RESOLUTION
“To establish a Joint Legislative Committee to conduct a study and investigation into the administration, conduct and operation of the State Department and/or Board of Education and other departments, boards, commissions and agencies of the state in connection with the letting of contracts for the erection and construction of public buildings and improvements.
“Be it Resolved by the House of Representatives, the Senate concurring therein, that there is hereby created a committee of seven members, three to be appointed by the President of the Senate from the membership of the Senate and four to be appointed by the Speaker of the House of Representatives from the membership of the House which committee shall have full authority to study, inquire and make a research into the recent investigation and hearing by the Department of Education into the contracts relating to and construction of the Student Union Building at Northwest (sic) College at Natchitoches, Louisiana, The Department of Education, its employees, agents and agencies and the Attorney General, his agents and employees are authorized and directed to surrender and deliver to said committee any and all records, charts, contracts, testimony, documents and all of the records of said hearing.
“Be it Further Resolved that the committee shall have the power and authority to hold hearings, subpoena witnesses, administer oaths, compel the production of books, documents, and records, papers public or private, and to do all other things necessary to accomplish the purposes of this resolution. It shall also have power to take testimony at public or private hearings, but no testimony taken at a private hearing shall form the basis of any report by the Committee to the Legislature unless such testimony is presented as evidence at a public hearing.
“Be it Further Resolved that failure to comply with any order of the committee issued in accordance with or under authority of this Resolution, refusal to testify, produce any books, documents, paper and records, public or private within five days from the date of a request by the committee, or any act of disrespect of or disorderly or contemptuous behavior before the committee shall constitute contempt of the committee, and the committee shall have the power and authority to institute proceedings in any court of competent jurisdiction for the punishment thereof in accordance with the penalties fixed by Article III, Section H (sic) of the Louisiana Constitution, and, in addition, false swearing or perjury before the committee shall, in like manner, be punished in accordance with the laws of the State.
“Be it Further Resolved that the committee shall submit its findings and recommendations to the Legislature not later than May 30, 1965.”

. “You are hereby commanded to appear in the Senate Chamber, First Moor, Capitol Building, Baton Rouge, Louisiana, on Wednesday, January 13, 1965, at the hour of 10:00 A. M., and there remain until discharged by the undersigned committee by whom you are hereby summoned to testify to the truth in and for the hearing being conducted by said committee pursuant to and in accordance with the provisions of House Concurrent Resolution No. 54 adopted by the Louisiana State Legislature in Special Dession November, 1964.
“And herein fail not under penalty provided in said resolution, Article III, Section II (sic) of the Louisiana Constitution and the Statutes of the State of Louisiana.
“January 6, 1965
“By order of the Joint Legislative Committee created by House Concurrent Resolution No. 54 — November, 1964.

. “That the defendant, * * *, did appear on the day and date mentioned above and did refuse to answer certain questions, which were in proper form and relevant to the subject matter under investigation by the Committee, asked by members of the said Joint Committee,

. The right of congressional inquiry thi-ough committees is a necessary adjunct to American democratic process. Cole v. Loew’s Inc., 340 U.S. 954, 71 S.Ct. 570, 95 L.Ed. 688.
Power of Congress to conduct investigations is inherent in the legislative process, and is broad. Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273.
54 Am.Jur. United States, Sec. 32, p. 545.
“§ 32. Investigations and Inquiries.' — It is generally conceded tbat inherent power is reposed in legislative bodies to conduct investigations in tbe aid of prospec- *814 tivo legislation and for the purpose of securing information requisite to the discharge of their functions and powers; this power they may exercise directly or through properly constituted legislative committees; while there is no provision in the Federal Constitution expressly investing either House of Congress with power to make investigations and exact testimony to the end that it may exercise its legislative function advisedly and effectively, this power is so far incidental to the legislative function as to be implied. Either House of Congress, or a committee duly constituted by it, has a constitutional power to conduct separate investigations for proper purposes, such power being necessary and appropriate to make its express powers effective. The two Houses of Congress in their separate relations possess not only such powers as are expressly granted to them by the Constitution, but such auxiliary powers as are necessary and appropriate to make the express powers effective, and in actual legislative practice, power to secure needed infonnation by such means has long been treated as an attribute of the power to legislate. * * it»

. 81 C.J.S. States § 46, Production of Books and Papers, p. 965.
“Generally in a proper investigation by the legislature or a committee thereof, the production of documentary evidence necessary to the inquiry may be compelled by issuance of subpoena duces tecum.”
“Generally, in a proper investigation by the legislature or a committee thereof, the production of documentary evidence may be compelled. In re Joint Legislative Committee to Investigate Educational System of State of New York, 32 N.E.2d 769, 285 N.Y. 1. So where an investigating committee is authorized to-issue subpoenas, it may issue subpoenas duces tecum. Shelby v. Second Nat. Bank, 19 Pa.Dist. & Co., 202, 211. 59 C.J. p. 99, note 94.”
Congress has power, co-extensive with power to legislate, to investigate matters and conditions relating to contemplate legislation; and such power includes authority to compel testimony, either through its own processes or through-judicial trial. Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964.

. “Since World War II, the Congress has-practically abandoned its original practice of utilizing the coercive sanction of contempt proceedings at the bar of the House. The sanction there imposed is imprisonment by the House until the recalcitrant witness agrees to testify or disclose the matter sought, provided that the incarceration does not extend beyond adjournment. The Congress has instead' invoked the aid of the federal judicial' system in protecting itself against contumacious conduct. It has become customary to refer these matters to the-United States Attorneys for prosecution-under criminal law. The appropriate-statute is found in 2 U.S.C. § 192, 2 U.S. C.A. § 192.” Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173.

. Article III, Sec. 11, Constitution of Louisiana, 1921. “Either house, during the-session, may punish by imprisonment any person not a member who shall have been guilty of disrespect, or disorderly or contemptuous behavior; but such imprisonment shall not exceed ten days for-each offense.”

. See: Sweezy v. State of New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311. The Attorney General of New Hampshire was designated a legislative committee of one man to conduct an investigation. He was authorized to bring contempt proceedings in state court.

. The trial court’s reasons, in part, are:
“There is clear inference to the effect that the Legislature has power to punish for contempt in its own way, or it can call on the courts for assistance operating through the District Attorney under the provisions of R.S. 24:4 through 6. Except in the manner set out in R.S. 24:4 through 6 this Trial Judge knows of no law or procedure, nor has any been called to his attention, permitting the courts to punish anyone for contempt of the Legislature. Except by following the provisions and procedure set out in this Act, the Court is powerless to act or to entertain jurisdiction for contempt proceedings against the Legislature.
“I am heartily in favor of what the Legislature is trying to do here, and to be perfectly frank, I was reluctant to say what X have just said. I didn’t want to say it, to be honest with you, because the Legislature belongs to me as much as it does anybody else. I help pay their salary and benefit from the wisdom of the laws that they pass. And this is a good resolution if they had stopped soon enough, or if they had specifically proceeded under the provisions of the Revised Statute 24:4 through 6. But they didn’t do it. I don’t know of any power that the Court lias other than to vacate and set aside this rule for contempt of court in the two eases that are before the Court. I think under this resolution as worded the penalty part of it is null and void, and meaningless. They still have the power to prepare a resolution entitling the committee to proceed. * *

. Jurney v. MacCracken, 294 U.S. 125, 55 S.Ct. 375, 379, 79 L.Ed. S02.
“[2] Second. The power of either House of Congress to punish for contempt was not impaired by the enactment in 1857 of the statute, Rev.St. § 102 (2 USCA § 192), making refusal to answer or to produce papers before either House, or one of its committees, a misdemeanor. Compare Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692. The statute was enacted, not because the power of the Houses to punish for a past contempt was doubted, but because imprisonment limited to the duration of the session was not considered sufficiently drastic a punishment for contumacious witnesses. That the purpose of the statute was merely to supplement the power of contempt by providing for additional punishment was recognized in In re Chapman, 166 U.S. 661, 671, 672, 17 S.Ct. 677, 681, 41 L.Ed. *816 1154: ‘We grant that congress could not devest itself, or either of its houses, of the essential and inherent power to punish for contempt, in cases to which the power of either house properly extended; but because congress, by the act of 1857, sought to aid each of the houses in the discharge of its constitutional functions, it does not follow that any delegation of the power in each to punish for contempt was involved, and the statute is not open to objection on the account.’ Punishment, purely as such, through contempt proceedings, legislative or judicial, is not precluded because punishment may also be inflicted for the same aet as a statutory offense. * * * As was said in In re Chapman, supra, ‘the same act may be an offense against one jurisdiction and also an offense against anther; and indictable statutory offenses may be punished as such, while the offenders may likewise be subjected to punishment for the same acts as contempts, the two being diverso intuitu, and capable of standing together.’ ”

. “[T]he validity of a subpoena duces tecum, on attack, must depend upon the reasonableness of the order.” In re United Shoe Machinery Corporation, D.C., 6 F.D.R. 347.