EN BANC:
Petitioner herein, The joint Legislative Committee of the Legislature of the State of Louisiana, created by House Concurrent Resolution No. 54 of the 1964 Extraordinary Session of the Louisiana Legislature, represented herein and appearing by and through Senator Adrian G. Duplantier, its Committee Chairman, makes application to this court for a writ of certiorari and/or review of the Nineteenth Judicial District Court in its ruling and judgment rendered recalling and setting aside a rule nisi previously issued and directed to the Honorable L. O. Fuselier, District Attorney of Evangeline Parish. Fuselier was ordered to show cause why he should not produce and make available to the Joint Committee those documents and records which he was ordered to produce in accordance with a Committee subpoena and subpoena duces tecum issued on February 3, 1965. The ruling of the lower court that relator complains of is that which recalled and set aside the rule and dismissed the plaintiff-relator’s suit.
As we stated in the companion suit with which this one was consolidated for the purpose of hearing,[1] we are departing from our usual procedure, as outlined in the rules of this court, for the consideration of the application for writs, and our granting of the writs applied for, because of the importance of the subject matter, the urgency of making a determination of the issues involved, and because of the exigency of the proceedings as time is of utmost importance. Too, we have omitted, in granting the writ of certiorari herein, ordering the trial court to send up the records in this matter for the reason that the application filed herein contains copies of the entire proceedings heretofore had in the trial court, and it would be a needless waste of time to delay until the trial court could comply with an order to send up the record.
All parties to this proceeding have appeared before this court in presenting oral arguments and have also filed briefs setting forth their respective contentions. The matter is now submitted to us for decision.
The chronology of events are these in this matter: In November, 1964, the Legislature, in special session adopted a Joint *819 Concurrent Resolution forming a committee to make a certain investigation more fully set forth in the resolution. See: Opinion rendered this date in ASP, Incorporated v. Capital Bank & Trust Company which is made a part of this opinion by reference. On February 3, 1965, the Committee issued a subpoena and subpoena duces tecum to Fuselier, in his capacity as District Attorney - of Evangeline Parish, to appear before the Committee on February 9, 1965 and to produce and make available to said Committee at the same time all records, charts, contracts, testimony, documents, tapes, recordings which are part and record of the investigation and hearing by the Department of Education into contracts relating to the certain buildings at Northwestern State College at Natchitoches, and all books, records, tapes, recordings, contracts and documents whatsoever delivered to him by the Attorney General of the State of Louisiana relating to said hearing and investigations.
Fuselier appeared on the appointed day before the Committee, but refused to make available the materials sought under the subpoena duces tecum. The District Attorney’s refusal to produce the materials was grounded on an opinion rendered by the Attorney General of this State. In substance, the Attorney General’s opinion is that the records sought by the Committee are not public records and that inasmuch as the records have been used by the grand jury, these records are not subject to inspection by this Committee.
This proceeding then was instituted in the lower court in which petitioner prayed that Fuselier be served with a copy of this petition and be duly cited to appear and answer, and that a rule nisi issue directing Fuselier to show cause on a day and at an hour to be selected by the lower court why he (Fuselier) should not produce and make available to petitioner, those documents described supra.
On February 23, 1965, the lower court ordered Fuselier to show cause on March 8, 1965, why the order prayed for should not be granted.
From a reading of the oral reasons for judgment [which were reduced to writing and are incorporated in the record] and the Committee’s brief, it is obvious that the trial judge and counsel were confused about what the Committee was seeking by this summary process. The trial court recalled and set aside the order on the basis that the Committee had no authority to bring contempt proceedings against defendant.
In addition to the defendant filing an answer to the Committee’s petition, he also filed the following pleadings, namely:
1. Exception of no right and no cause of action;
2. Exception to procedural capacity; and
3. Exception to jurisdiction.
We will discuss the exceptions in the order stated above. The exception of no right and no cause of action. The exception of no right of action is (a) directed toward the ground that the resolution is broader than its title and does not have a title indicative of its object, all in violation of Article 3, Section 16 of the Louisiana Constitution, LSA; (b) that the resolution is unconstitutional, null and void because it does not state that said alleged investigation affects the prerogatives and duties of the Legislature and thus is in violation of Article 5, Section 17 of the Louisiana Constitution; (c) that the resolution is unconstitutional because it was adopted at a special session called by the Governor for purposes other than those described in said resolution and that it was not germane to the objects of the proclamation of the Governor; (d) that the attorney representing the Committee is not authorized by the Attorney General to prosecute this action; (e) that the resolution had for its object an investigation of an investigation conducted by the Department of Education, whereas there was no such investigation and inquiry.
*820 Now wc will discuss the defendant’s contentions:
(a) The requirements of Article 3, Section 16 of the Constitution are not applicable to resolutions of either house of the Legislature. A reading of this Section of Article 3 clearly demonstrates that it has no application whatever to a House Concurrent resolution such as passed by this Extraordinary Session of 1964.
(b) The objection that the resolution does not state that the alleged investigation affects the prerogatives and duties of the Legislature is groundless. Article 5, Section 17 contains no requirement that the prerogatives and duties must be detailed in the resolutions, but rather this section provides that such resolution shall not require the signature of the Governor. It is not a •condition required for the resolution. If this does not affect the prerogatives and duties of the Legislature, the burden is on the defendant to allege and prove facts showing wherein the prerogatives and duties of the Legislature are not affected. Defendant has failed to do this.
(c) The resolution concerns a subject of action to be taken by the Legislature and is for its internal concern. This resolution concerns a subject of self-direction, creates a committee of less than the whole body and instructs the committee in the course of its duties and actions. The resolution is not legislation, and the subject thereof need not be included in the Governor’s call for the resolution to be legal and effective for the purposes intended by the Legislature.
(d) The Legislative Committee is not bound to enlist the services of the Attorney General in order to have legal counsel and to proceed in the manner it has in this instance. Under the division of the departments of government, the Legislature is free and at liberty to seek and retain Committee counsel apart from the office of the Attorney General.
As to the nature of the object of the resolution, this is a matter of proof about which no evidence was introduced, however, until it is affirmatively shown otherwise, this court presumes that the object of the investigation is of a matter about which prospective legislation could be contemplated. We will not pass on the merits of the wisdom of the investigation.
We have examined the grounds urged for the basis of the exception of no cause of action, and suffice it to say, there is no merit whatever to this exception.
Addressing ourselves now to a consideration of the exception of procedural capacity, the ground urged therefor is that the petition contains no allegation that the chairman is acting under the authority of a resolution of the alleged committee. There is no merit to this exception.
Equally so, there is no merit to the exception to jurisdiction. The domicile of the Committee is East Baton Rouge Parish, the defendant was directed by the subpoena to appear before the Committee in East Baton Rouge Parish, and the defendant’s failure to comply with the subpoena occurred in East Baton Rouge Parish. The Nineteenth Judicial District Court is fully vested with jurisdiction to hear and determine the issues before it in this proceeding.
We next consider the defense as set forth in the answer of the defendant in rule. The defendant in answer to Article 4 of the plaintiff’s petition admits that he did appear on the day and date mentioned and did refuse to produce and make available to the Committee those records referred to in the subpoena and subpoena duces tecum, basing his refusal on the opinion rendered by the Honorable J. P. F. Gremillion, Attorney General for the State of Louisiana, dated February 9, 1965, “a copy of which is attached hereto and made a part hereof.”
He further admitted the allegation that the Attorney General’s opinion referred to in Paragraph 4 of the plaintiff’s petition stated that the documents and records sub- *821 poened by petitioner “are not public records and not subject to inspection under the authority of R.S. 44:1, et seq.”
In Article 8 of his answer the defendant “further answering defendant alleges that the documents and records in his possession are in his custody for and on behalf of the Evangeline Parish Grand Jury. Same having been presented to said Grand Jury in an investigation conducted by it.” (Emphasis added.)
In Article 9 of his answer he alleges “in the alternative should the Court be of the opinion that the plaintiff is legally entitled to said record the matter under investigation is not completed and has not been disposed of.”
Although the Committee takes the position that it does not rely on the Public Records Act, LSA-R.S. 44:1 et seq., for authority to inspect the documents and records sought under the subpoena duces tecum from the defendant in this rule but on the contrary is specifically seeking the records under the authority of House Concurrent Resolution No. 54 adopted by the Louisiana State Legislature sitting in Extraordinary Session in November, 1964, nevertheless, the question of whether the documents sought are public records has been injected into this suit by the opinion of the Attorney General rendered on February 9, 1965 to the defendant in rule. Apparently, the Attorney General bases his opinion upon the case of Hewitt v. Webster, La.App., 118 So.2d 688, decided by our brethern of the Second Circuit in 1960. We are in full accord with this excellent opinion and the conclusion that it reached therein based upon the facts in that case. However, we do not believe that it is apposite or controlling under the facts in the case at bar. In that case the plaintiffs sought to have declared public records subpoena returns for witnesses to appear before a grand jury and, as such, subject to their inspection under the provisions of LSA-R.S. 44:1 et seq., commonly known and referred to as the Public Records Act. Made defendants were the Clerk of Court and the Sheriff of Caddo Parish, Louisiana, in and for which Parish the grand jury was impaneled and in which plaintiffs resided and of which they were citizens and electors.
In the case the Court reasoned and stated:
“From neither the facts nor the law could the documents in question be characterized as permanent public records. We have been referred to no authority, and our search reveals no authority, whereby the clerk of court is directed or authorized to issue grand jury summonses, or that either the sheriff or the clerk is designated custodian for such subpoenas or returns, or that, in fact, a custodian has even been designated for those documents. Too, it may be pointed out that neither the witnesses appearing before a grand jury are paid for their appearance, nor the sheriff remunerated for serving the subpoenas. Hence, no record for public inspection or auditing is permitted or authorized. The keeping or preservation of these or similar records would contravene both the statutory provisions and public policy as to secrecy of grand jury proceedings. A grand jury may, on its own initiative, investigate any matter coming to its attention, from whatever source, and, for that purpose, may receive testimony of witnesses voluntarily appearing, or it may issue its own summonses and subpoenas without the enlistment, or intervention, of the services of any public official or office.
“The grand jury has the power to act in only one of the following ways: (1) by returning a true bill; (2) by returning a ‘no bill,’ or not a true bill; and (3) by pretermitting entirely the matter investigated. It is prohibited from otherwise making any report on any matter submitted to it for investigation, except as the law may expressly so provide. LSA-R.S. 15:210. In- *822 eluded in the exception is the inspection and report to he made of the prisons, hospitals, and public institutions maintained within the parish in which the grand jury is impaneled. LSA-R.S. 15:211.
“We know of no statutory provision for the keeping or preservation, by the grand jury, of the subpoenas and returns for the witnesses to appear before it. Their use is only temporary and no purpose could be served by their preservation as permanent records.”
The Court then cited several criminal cases to support its views and thereafter stated:
“While it is true that the authorities herein cited were criminal prosecutions and involve the statutory rights of the parties therein accused, the logic applied is probably more, but at least equally, applicable to this action wherein plaintiffs have no particular or special interest or rights to inspect and peruse generally the public records other than as specifically recognized and conferred upon them as members of society in general.
“We conclude, therefore, that the subpoenas for the appearance of witnesses before the grand jury and the returns of service thereon are not such public records, as contemplated by the Public Records Act, and are, therefore, not subject to public inspection.”
Based upon the above case, the Attorney General reached the opinion “that since these documents and records have been used in a grand jury proceeding and used before that body, that they are not public records and not subject to inspection under the authority of R.S. 44:1, et seq.”
We do not agree that the mere use of a record by a grand jury changes it from a public record under the broad definition of the Public Records Act to a private record and therefore not ever subject to inspection under authority of LSA-R.S. 44:1 et seq. This act states in Section 2 that records involved in legislative investigations “[ajfter final disposition, the records, writings, accounts, letters, letter books, photographs or copies thereof, are public records and subject to the provision of this Chapter.”
Also in Section 3, Records held by investigation officer or agency states:
“A. This Chapter shall not apply to public records when they are held by any sheriff, district attorney, police officer, investigator or investigating agency of the state as evidence in the investigation or prosecution of a criminal' charge, until after the public records-have been used in open court or the criminal charge has been finally disposed of.”
The defendant in rule in his answer bases his refusal to produce the records in compliance with the subpoena duces tecum first on the authority of the Attorney General’s opinion which we have discussed above. Secondly, he has injected by Articles 8 and 9 of his answer the provisions of LSA-R.S. 43:3 into the case as a defense.
These records have been in the possession of the defendant in rule and/or the grand jury for the Parish of Evangeline for many months and as a matter of fact the grand, jury has investigated the matter and must-of necessity have submitted a public report of its findings as to true bills, no true bills, and pretermissions. There is nothing to show that a true bill was found but, on the contrary, we can only presume that such was not the case and therefore admitting or-taking the view that these records were public records under the broad definition of' the act, they are not being held to be used, in open court. There is no showing in the record that any criminal charge was ever-made in connection with these records or-that if the records reveal one that it has. not been finally disposed of other than Article 9 of the defendant in rule’s answer ■ which is in the alternative that “should the- *823 courts be of the opinion that plaintiff is legally entitled to said records, the matter under investigation is not complete and has not been disposed of.” This would amount to an allegation of pretermission of the matter by the grand jury; however, there is no evidence to show that the grand jury even pretermitted this matter. If mere allegations unsupported by proof are to serve as a defense to obtaining such records as in the case at bar under subpoena duces tecum, then they may be held until Doomsday. Let us assume for the sake of argument that possibly these records might reveal information sought by the Committee with regard to acts committed imposing civil or criminal liability by persons within the jurisdiction of other parishes, for instance in the Parish of Natchitoches where the construction of the school facility under investigation is located. Could one say that the grand jury in the Parish of Evangeline merely on an allegation that the investigation is not complete, without submitting proof, where the grand jury has had the benefit of the document in an investigation and has long since adjourned, could effectively block any action against the investigation of any otjier parties coming under the jurisdiction of authorities in other jurisdictions.
While we are not concerned specifically with the prescription of civil or criminal actions which might have been uncovered in the investigation by the Board of Education and revealed in the documents sought herein under the subpoena duces tecum, a denial of the relief sought by the Committee may well contribute to the prescriptive bar as the contents of documents sought are well known to and have been and are now in the possession and custody of competent officials legally authorized and empowered to initiate civil or criminal action and who therefore have had full knowledge of such civil or criminal liability.
We are of the opinion that the Committee under the facts in this case is entitled to have the defendant in rule produce these records to be used in the investigation by the Committee under the writ of subpoena duces tecum.
These records are not such private records as were considered in the Hewitt v. Webster case, which evidently was nothing more nor less than an attempt by private citizens to obtain the names of witnesses who appeared before the grand jury to testify in its investigation of matters before it. In that case the court properly remarked that the plaintiffs therein had no particular or special interest or right to inspect and peruse the records sought which were of a private nature. This is not true in the case at bar. Here we have a legally constituted legislative committee charged with the duty, and invested with the right, to investigate the matter which was the subject of an investigation by the Board of Education and which resulted in the compilation of the documents herein sought under the subpoena duces tecum.
We are therefore of the opinion that regardless of whether the documents sought under the subpoena duces tecum in this case are branded public or private the committee herein is factually and legally entitled to the relief sought: namely, the production of the documents by the defendant in rule in compliance with the subpoena duces tecum.
As we appreciate it, the materials sought by the Committee of the defendant are books, records, documents, etc., produced, developed and acquired in a prior investigation conducted by another agency of the State, namely, the State Board of Education. These records merit no veil of secrecy as would evidence produced, obtained, developed or testified to before a grand jury. These materials assume no privileged status by reason of having been considered by the Grand Jury of Evangeline Parish, if, in fact, such is the case. This material was considered by the agency that first conducted an investigation, was later in the hands of the Attorney General and then delivered to the defendant. Any number of individuals controlled and had pos *824 session of it prior to the defendant obtaining it from the Attorney General. There is no conceivable legal reason why this Committee of the Legislature should be deprived of free access to these materials.
Accordingly, there is judgment herein annulling and setting aside the judgment of the Nineteenth Judicial District Court recalling and setting aside the order previously issued to defendant, L. O. Fuselier. Further, the Honorable L. O. Fuselier is hereby ordered to comply with the subpoena duces tecum issued to him by the said Committee. Defendant to pay all costs hereof.
Reversed and rendered.

. ASP, Incorporated v. Capital Bank & Trust Company, La.App., 174 So.2d 809.