373 So.2d 188 (1979)
HOUSE OF REPRESENTATIVES, etc.
v.
Sherman A. BERNARD et al.
No. 64346.
Supreme Court of Louisiana.
June 25, 1979.
*189 John R. Martzell, Martzell & Montero, New Orleans, for defendant-applicant.
David R. Poynter, Baton Rouge, for plaintiff-respondent.
BLANCHE, Justice.
This matter arises out of an adjudication of contempt by the Louisiana House of Representatives against the defendants, Sherman A. Bernard[1] and Richard C. Britson.[2]
On June 9, 1978, in response to a subpoena, Bernard and Britson appeared before the Subcommittee on Insurance Regulations of the House Commerce Committee of the Louisiana Legislature (hereinafter referred to as "Subcommittee"). The transcript of the hearing reflects that immediately after the hearing was convened and the first witness called, Bernard approached the microphone and insisted upon reading a statement to the Subcommittee. The chair advised Bernard that he was out of order and that he would have a later opportunity to make a statement. Bernard persisted, informing the committee that they would hear the statement whether they wanted to or not. The chair then advised Bernard that if he continued to persist in making the statement he would be held in contempt of the committee. Bernard acknowledged, "Well, I am in contempt then but I am going to make the statement." After Bernard finished reading the statement, he began to leave the hearing room. Bernard was informed that the committee intended to hold a contempt proceeding at which time he would be given an opportunity to present any defenses. He was also told that by leaving the room he was waiving any opportunity to present defenses to the charges of direct contempt. Britson was also so advised and responded that his position was the same as Bernard's. At that time, the two defendants exited the committee room.
Following this outburst, the committee voted to find both Bernard and Britson in contempt for contumacious and disorderly behavior toward the committee which interfered with the business of the committee and for failing to honor the subpoenas by staying until discharged. Each man was *190 fined $250 for the outburst and $250 for failure to honor the subpoenas.
On June 14, 1978, the full House Committee on Commerce met to consider the actions taken by the Subcommittee in holding Bernard and Britson in contempt. The committee voted to ratify the action of the Subcommittee.
A House Resolution (Resolution 18) acknowledging, ratifying and affirming the action of the Subcommittee was subsequently filed and assigned to the Committee on House and Governmental Affairs. At the hearing, defendants appeared through counsel and filed briefs opposing the passage of the resolution. The resolution was favorably reported to the full House where it was subsequently adopted. The resolution also provided that upon the failure of the defendants to pay the fine within ten days of service of the resolution, the Clerk of the House of Representatives was authorized and instructed to take action by summary civil proceedings in the Nineteenth Judicial District Court to collect the fines plus legal interest and reasonable attorney's fees.
Thereafter, the Clerk of the House of Representatives filed this summary proceeding seeking judicial recognition and execution of its contempt adjudication. The defendants filed declinatory exceptions of lack of subject matter jurisdiction, peremptory exceptions of no right and no cause of action, and a motion to strike the plaintiff's demand for legal interest and attorney's fees.
The trial court overruled the defendants' declinatory exception of lack of subject matter jurisdiction and peremptory exceptions of no right and no cause of action. The court sustained the motion to strike the claim for interest and attorney's fees on the ground that no constitutional or statutory authority existed for the same, nor were they part of the contempt adjudication. No complaint has been made as to this ruling. The trial court held that the contempt adjudication procedure used by the House had not denied the defendants' rights to due process. On October 10, 1978, the court entered a judgment making the fines imposed executory.
The defendants appealed to the First Circuit Court of Appeal on October 11, 1978. Since it was not clear what proper appellate procedure should be utilized, on November 9, 1978, defendants also filed an application for writs of certiorari, seeking to invoke this Court's supervisory jurisdiction. We denied the application. 365 So.2d 823 (La. 1978). On its own motion, the Court of Appeal, on January 15, 1979, ordered the parties to show cause why the appeal should not be dismissed for lack of jurisdiction, and subsequently rendered a judgment dismissing the appeal on that basis. House of Representatives of Legislature of Louisiana v. Bernard, 369 So.2d 1164 (La.App. 1st Cir. 1979). We granted writs to consider the correctness of the judgment below. House of Representatives of Legislature of Louisiana v. Bernard, 370 So.2d 890 (La.1979).

Jurisdiction of the Court of Appeal
The threshold issue is whether the Court of Appeal erred in dismissing defendants'/applicants' appeal on the grounds that it lacked jurisdiction.
Article 5, § 10(A) of the 1974 Louisiana Constitution provides:
"(A) Jurisdiction. Except in cases appealable to the supreme court and except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of all (1) civil matters decided within its circuit and (2) matters appealed from family and juvenile courts, except criminal prosecutions of persons other than juveniles. It has supervisory jurisdiction over cases in which an appeal would lie to it." (Emphasis added)
The First Circuit Court of Appeal held that the proceeding to enforce the contempt adjudication was criminal in nature. Since their jurisdiction extends only to civil matters, the appeal was dismissed.
For the reasons more thoroughly set forth below in our discussion regarding jurisdiction of the trial court to render a judgment making executory the contempt adjudication *191 and the House of Representatives' right to seek such relief, we hold that the Court of Appeal erred in finding the instant proceeding to be "criminal" or "criminal in nature" and that it was therefore without jurisdiction.
Normally, upon such a finding we would remand the case to the Court of Appeal to allow that court to review the case on its merits. Shapiro v. Shapiro, 242 La. 903, 139 So.2d 762 (1962); Mataya v. Delta Life Insurance Company, 222 La. 509, 62 So.2d 817 (1953); Buckley v. Thibodaux, 181 La. 416, 159 So. 603 (1935). It is well settled, however, that where this Court grants a writ of certiorari or review, the whole case is before us as if it had been brought here by appeal. E. g., Oil Field Supply & Scrap Material Company v. Gifford Hill & Company, 204 La. 929, 16 So.2d 483 (1944). All of the issues on the merits were completely briefed and argued before this Court and all of the parties have requested that we proceed with an opinion on the merits. The historical development of this case convinces us that fairness to the parties and the need for swift judicial determination of the important issues raised by this litigation require this Court to exercise our discretion and render a determination on the merits.

Power of the Legislature to Punish for Contempt
While no party seriously challenges the inherent and constitutional powers of the legislature to punish for contempt, we feel it necessary to set forth those powers briefly. The First Circuit Court of Appeal, in ASP, Incorporated v. Capital Bank & Trust Company, 174 So.2d 809 (La.App. 1st Cir. 1965), accurately outlined the parameters of legislative contempt power:
"We believe the following basic principles of our form of government should be noted and kept in mind in consideration of this matter. Our constitution provides in Article II, Section 1, LSA`The powers of the government of the State of Louisiana shall be divided into three distinct departmentslegislative, executive, and judicial.' And, Section 2 provides: `No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.'
"It is universally recognized that with the power to legislate there is inherent in the Legislature the power to conduct investigations, and that these investigations should be conducted solely as an aid to its consideration and determination of prospective legislation. The right of inquiry and investigation may be exercised by it as a body of the whole legislature, or the Legislature may delegate its investigative powers to a committee of less than the whole of the Legislature. ...
"In furtherance of the Legislature's right to investigate, the Legislature, or a committee designed by it, has the unquestionable right to require the attendance of anyone from whom it desires to obtain pertinent information. This right is exercised through the power of the subpoena and the subpoena duces tecum. ...
"In the exercise of the power of subpoena and subpoena duces tecum, the Legislature would be helpless and ineffective to command compliance with its order unless it has the power to punish for contempt or a method of instituting contempt proceedings. Equally inherent, then, with the power of subpoena is the power of the Legislature to punish for contempt. ...
"The broad and non-exclusive right to punish for contempt is provided in Article III, Section 11 of the Constitution of Louisiana.[[3]]... In addition to the constitutional provision, there is a statutory *192 provision made for the punishment of contempt of the legislature or any committee constituted by it. This is found in LSA-R.S. 24:4-6. This too is non-exclusive. LSA-R.S. 24:4-6 is the State's counterpart of the statutory contempt procedure provided by Congress in 2 U.S.C. § 192.

. . . . .
"The power of the Legislature to punish for contempt was not in any way or manner impaired, delimited or restricted by the enactment of LSA-R.S. 24:4-6. Any person who is in contempt of the legislature may be punished by the House or Senate, which ever one the contempt was committed against, and the same act will give rise to a prosecution under the provisions of LSA-R.S. 24:4-6. The one act may be a statutory offense under the penal clause of the statute and also a violation of the inherent authority of the Legislature." (174 So.2d at 813-815)
The power of the legislature to punish for contempt without reliance on the executive or judicial branches of government is of great importance to the maintenance of the legislature as a coordinate branch of government. See Comment, Constitutional LawDue ProcessPower of a Legislature to Punish for Contempt, 40 Wis.L.Rev. 268, 278 (1971).
We hold, therefore, that the House of Representatives is constitutionally empowered to charge, adjudicate and punish the defendants for contempt of its lawful authority without regard to the other two branches of government, provided, of course, that in doing so it does not violate any constitutional rights of the defendants.

Exceptions of Lack of Subject Matter Jurisdiction and No Cause of Action
The learned trial judge correctly reasoned that "the principal issue raised by defendants' declinatory and peremptory exceptions is whether summary process is available to enforce the House's adjudication of contempt and imposition of fines." The defendants argue that the district court is without power to enforce the judgment of another tribunal without an independent adjudication of the contempt charges. Thus, the argument goes, that when the House makes the adjudication of contempt, it ought not be able to foster on the courts the duty of executing a judgment which the courts did not adjudicate. Defendants rely on Joint Legislative Committee of Legislature v. Strain, 263 La. 488, 268 So.2d 629 (1972). We find this argument unpersuasive.
In Strain, the legislature established by resolution a Joint Legislative Committee to investigate organized crime in Louisiana as it related to state and local governmental officials. The resolution expressly authorized the committee to hold public hearings, subpoena witnesses, compel production of books and documents, et cetera. Further, the resolution set forth:
"`... that failure to comply with any order of the committee issued in accordance with or under authority of this Resolution, refusal to testify, or any act of disrespect of or disorderly or contemptuous behavior before the committee shall constitute contempt of the committee and the committee, through its counsel, shall have the power and authority to institute proceedings in any court of competent jurisdiction for the punishment thereof in accordance with the penalties fixed by Article III, Section II (sic) ... of the Louisiana Constitution and, ... that in addition to the power and authority of the committee to punish for contempt as provided in Article III, Section II (sic) of the Constitution, the committee also shall have the power and authority to invoke the provisions of R.S. 24:4 through R.S. 24:6 ... in order to subject persons guilty of contempt of the committee to the penalties provided for therein.'" (268 So.2d at 632-633Emphasis added)
This resolution created in the committee the power to institute prosecutions in state courts for contempt of its authority. Likewise, R.S. 24:4 is another method through *193 which the legislature may exercise its power to punish for contempt granted by Article 3, § 7 of the Louisiana Constitution of 1974.
In Strain, the defendant refused to honor a subpoena of the committee. In response, the committee instituted proceedings under the authority of the above resolution in the Nineteen Judicial District Court by a rule to show cause why Strain should not be adjudged guilty of contempt of the committee and the legislature. Strain was found guilty and sentenced to ten days in jail.
On appeal the First Circuit Court of Appeal held that it had no jurisdiction on the grounds that its jurisdiction did not extend to criminal matters. Joint Legislative Committee of Legislature v. Strain, 248 So.2d 105 (La.App. 1st Cir. 1971).
We affirmed the Court of Appeal's decision dismissing the action for lack of jurisdiction. Justice Summers, for the majority, reasoned that the action in the lower court was analogous to judicial contempt adjudications and applied the criminal-civil contempt distinction developed in the jurisprudence on judicial contempt. Since the sentence was in the nature of a punishment, and not designed to compel the defendant to conform his conduct to the will of the committee, we found the contempt proceeding was criminal or criminal in nature and as such not appealable to the Court of Appeal.
In Strain, supra, we also recognized the power of the legislature to make the courts the implementing authority of its contempt power. In our original opinion, we noted:
"Nor is it a violation of the principle of separation of powers expressed in Article II, Section 1,[[4]] of the Constitution for the legislature to authorize the trial of contempt of the legislature in the courts of law. This is not a delegation of legislative power. It is more properly a provision for asserting legislative power by imposing the implementing authority upon the judiciary. It is no more an improper delegation of legislative power than it is to require by legislation the trial in the courts of crimes against the State." (268 So.2d at 636)
This concept was not altered by our opinion on rehearing where we said:
"Art. III, Sec. 10, La.Const. of 1921, supra, recites that each house of the Legislature may punish its members for contempt[[5]]; there are no penalties specifically provided except expulsion; it does not provide that each house shall be the exclusive condemnor of its members. We find no logical reason why the Legislature could not by the instant resolution provide for judicial enforcement of contempt of a legislative committee by a court of competent jurisdiction. ..." (268 So.2d at 648)
Our opinion in Strain cannot be interpreted to mean that the House of Representatives or the Senate must resort to the judiciary to have legislative contempt charges adjudicated. As noted in the discussion above, either house of our legislature is constitutionally empowered to adjudicate and punish persons in contempt of its lawful authority, nor can Strain be read to hold, as defendants suggest, that one body of the legislature cannot punish for contempt without the approval of the other.
Most important, Strain, supra, is not authority for the proposition that the legislature cannot use the courts of this state to execute fines imposed against defendants found guilty of contempt by a legislative body. To the contrary, since a contempt adjudication by the House or Senate is no more than a judgment rendered by a co-equal branch of government pursuant to express constitutional authority, we see no reason why the adjudicating body would be less entitled to enforce that judgment in the courts of our state than a party who seeks to have a judgment in one district enforced in another, or a person who seeks to have a foreign judgment enforced within this state.
*194 Moreover, the concept of utilizing civil process to collect criminal fines is not foreign to our law. LSA-C.Cr.P. art. 886 expressly provides:
"In the event of nonpayment of a fine, or of a fine and costs, within sixty days after the sentence was imposed, and if no appeal is pending, collection may be enforced in the same manner as a money judgment in a civil case."
The Official Revision Comment explains the provision's purpose:
"(b) This article provides for enforcement of an unpaid fine after sufficient time (sixty days) for taking an appeal has expired. Enforcement will be by a writ of fieri facias pursuant to the Code of Civil Procedure, Arts. 2291 et seq."

The original jurisdiction of the district courts of the state extend to "all civil and criminal matters." Article 5, § 16(A), Louisiana Constitution of 1974. There is no question that an action to enforce a judgment in another court other than the one in which said judgment was rendered is a "civil matter." LSA-C.C.P. art. 2781. Since we find a suit to make executory a legislative contempt adjudication is analogous to suits under Article 2781 to make executory judgments rendered in a court other than the one in which the execution is sought, we believe the district court properly overruled defendant's exceptions of lack of subject matter jurisdiction and no cause of action.
To summarize, we find that either the Senate or the House is entitled to seek to enforce contempt adjudications made by those bodies in the civil courts of this state. Such an action is civil, not criminal, since it is one to enforce a prior adjudication analogous to a judgment rendered by a court of proper jurisdiction in this state.[6] Since the proceeding is one to enforce a prior adjudication by a co-equal branch of government operating under express constitutional authority, no trial de novo is warranted. However, a defendant is entitled to raise any constitutional defenses, such as denial of due process, in order to block enforcement of the adjudication. Because the action to enforce a judgment is a civil action, the litigants would have the right to appeal the result to the intermediate court.

Due Process
Defendants claim the procedure adopted by the Subcommittee denied them due process. We disagree. The United States Supreme Court in Groppi v. Leslie, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972), examined the question of what procedures are required by the due process clause when a state legislature seeks to impose punishment for contemptuous conduct committed in its presence (direct contempt). The Court observed:
"... Courts must be sensitive to the nature of a legislative contempt proceeding and the `possible burden on that proceeding' that a given procedure might entail. [Citation omitted] Legislatures are not constituted to conduct full-scale trials or quasi-judicial proceedings and we should not demand that they do so although they possess inherent power to protect their own processes and existence by way of contempt proceedings." (92 S.Ct. at 585)
In Groppi, the Court reversed a finding of contempt on due process grounds, holding the defendant had not been given ample notice and opportunity to be heard where the Wisconsin Assembly, without notice, found defendant guilty of contempt two days after the act in question was alleged to have occurred. The Court indicated, however, that immediate adjudication of direct contempt might not create the same due process problems:
"The potential for disrupting or immobilizing the vital legislative processes of State and Federal Governments that would flow from a rule requiring a full-blown legislative `trial' prior to the imposition of punishment for contempt of the *195 legislature is a factor entitled to very great weight; this is particularly true where the contemptuous conduct, as here, is committed directly in the presence of the legislative body. The past decisions of this Court strongly indicate that the panoply of procedural rights that are accorded a defendant in a criminal trial has never been thought necessary in legislative contempt proceedings. The customary practice in Congress has been to provide the contemnor with an opportunity to appear before the bar of the House, or before a committee, and give answer to the misconduct charged against him. [Citations omitted] . . ." (92 S.Ct. at 585)
We believe our legislature, no less than our courts, must possess the power to act "immediately" and "instantly" to quell disorders in the chamber or committee room if it is to be able to maintain its authority and continue with the proper dispatch of its business. For these reasons, we hold the legislative contempt power includes the power to punish summarily those persons guilty of contempt of the legislature committed in its immediate presence.
There is no question that the conduct which formed the basis for both charges was committed in the immediate presence of the Subcommittee. Also, the Subcommittee immediately took up the question of whether to hold the defendants in contempt. Prior to their leaving the committee room, both defendants were advised that by leaving they were waiving any right to present any defenses or evidence in mitigation which they might have had. Bernard and Britson could not defeat the power of the Subcommittee from acting on the defendants' contemptuous conduct by voluntarily absenting themselves from the hearing room. Cf. Ex Parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888).
The defendants were also afforded a further opportunity to present any defenses or evidence in mitigation at a hearing before the Committee on House and Governmental Affairs. Bernard and Britson elected to appear through counsel who also filed briefs in opposition to the proposed ratification by the committee of the Subcommittee adjudication.
We find that the Subcommittee's holding a summary proceeding to determine whether or not defendants should be found in contempt of the legislature for acts committed in the immediate presence of the committee, which proceedings was held immediately following the conduct in question, did not violate the defendants' rights to due process. We, therefore, affirm the trial court's judgment making the fines imposed by the subcommittee executory.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed, defendants-applicants to pay all costs of these proceedings.
AFFIRMED.
NOTES
[1] Commissioner of Insurance for the State of Louisiana.
[2] Deputy Commissioner of Insurance for the State of Louisiana.
[3] Now Article 3, § 7(B) of the Constitution of 1974:

"(B) Subpoena Power; Contempt. Each house may compel the attendance and testimony of witnesses and the production of books and papers before it, before any committee thereof, or before joint committees of the houses and may punish those in willful disobedience of its orders for contempt."
[4] Article 2, § 1 is identical in both the Constitution of 1921 and Constitution of 1974.
[5] Now Article 3, § 7(B), Louisiana Constitution of 1974; the new provision is broader since it is not restricted to "members" of the legislature.
[6] It is fruitless to inquire, in light of our analysis, whether the adjudication before the adjudicating body could be characterized as "civil" or "criminal" contempt since the body would be entitled to enforce either by civil process.