329 So.2d 245 (1976)
Oscar UMBEHAGEN
v.
EQUITABLE EQUIPMENT COMPANY.
No. 6946.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearing Denied April 13, 1976.
Writ Refused June 11, 1976.
Steven R. Plotkin and Owen J. Bradley, Kronlage, Dittman & Caswell, Charles A. Kronlage, Jr., New Orleans, for plaintiffappellant.
Normann & Normann, Charles E. Leche, New Orleans, for defendant-appellee.
Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, for Employers *246 Mut. Liability Ins. Co. of Wisconsin, amicus curiae.
United States Dept. of Labor, William J. Kilberg, Solicitory of Labor and Joshua T. Gillean, II, Washington, D.C., for Director, Office of Workers' Compensation Program, U.S. Dept. of Labor, amicus curiae.
Before SAMUEL, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
This is an appeal from a summary judgment dismissing plaintiff's suit for workmen's compensation benefits. The sole issue is whether plaintiff, under the circumstances of this accident, can elect to pursue his compensation claim under the Louisiana Workmen's Compensation Act, R.S. 23:1021 et seq., or whether the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., as amended in 1972, provides his exclusive remedy.
Plaintiff, employed as a shipfitter by Equitable Equipment Company in a barge and boat building operation, was injured while working on barge assembly inside a fabrication building used exclusively for ship construction. The building adjoined the Industrial Canal (admittedly a navigable waterway), separated from the water by a narrow area in which a movable loading crane was located. In the course of Equitable's operation, barges were assembled in the fabrication building, then moved into an adjacent area for blasting and painting, and finally launched directly into the Industrial Canal.

I
The pertinent provisions of the amended federal act as to coverage of accidents in areas adjoining navigable waters are:
"§ 902.
"When used in this chapter
* * * * * *
"(3) The term `employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.
"(4) The term `employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing or building a vessel).
"§ 903.
"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). * * *"
The federal act undoubtedly applies under the circumstances of this case. Plaintiff was employed and actively working in the building of a barge and thus was a shipbuilder under any reasonable interpretation of § 902(3), and he therefore qualified as an employee. Equitable's employees worked in maritime employment, as included in the illustrations listed in § 902(3), in an area adjoining navigable waters customarily used by Equitable in building vessels, and Equitable thereby qualified as an employer under § 902(4). Moreover, the injury occurred *247 upon navigable waters as defined in § 903(a).
We therefore reject plaintiff's contention that his claim was not cognizable under the federal act because he was not directly involved in the building of a vessel, but was simply fabricating parts used by other Equitable employees in shipbuilding. The 1972 amendments extended coverage to all employment-related injuries occurring within the territorial limits established by the amended act, when both the employer and employee qualify as such under a broad construction of the terms of the act.
We hold that the amended federal act provides coverage under the facts and circumstances of this case.

II
The more difficult question is whether application of the state act is precluded when jurisdiction under the federal act exists.
Plaintiff contends that benefits under the state act in this particular case are "much more generous" (perhaps because of Louisiana's liberal standards for determining total disability) and that he should be allowed to elect between concurrently applicable compensation remedies so as to achieve optimum recovery of benefits. On the other hand, Equitable contends that the very purpose of the 1972 amendments was to eliminate the "twilight zone" of concurrent jurisdiction by providing for exclusive recovery under the federal act where that act applies. These contentions raise questions as to the pre-eminence of the federal maritime power in cases where states have otherwise valid legislative jurisdiction.
Congress has the power and authority to legislate compensation liability for accidents occurring over navigable waters. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Arguably, Congress also has the power and authority under Articles I and III of the United States Constitution to legislate liability for shoreside accidents incurred in maritime employment. See Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971).[1]
Thus, the issue framed in this case is whether Congress in exercising this power and authority pre-empted the field and thus precluded states from exercising legislative jurisdiction over maritime employment injuries occurring on land.
Historical Background
The United States Supreme Court in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), held that a state compensation act did not apply to a longshoreman injured aboard ship while loading cargo. Since the nature of the employment and the site of the injury were maritime, the state could not validly legislate liability and thereby prejudice the constitutionally required national uniformity of the maritime law.
Thereafter, in Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922) the Supreme Court established the "maritime but local" test, holding that the required uniformity was not prejudiced by the application of state law when plaintiff's injuries occurred during construction of a partially completed vessel lying in a dry dock on navigable waters. The court characterized the contract for constructing the vessel as non-maritime and plaintiff's activities and general employment as not related directly to navigation. Subsequent cases drew fine distinctions based on abstract concepts in individual cases.
In 1927 Congress enacted the Longshoremen's and Harbor Workers' Compensation *248 Act. Section 3 of the act originally provided in pertinent part:
"Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." (Emphasis supplied)[2]
After an ensuing period of confusion caused by the perplexing problem of determining when a state could or could not grant protection under a compensation act, the "twilight zone" rule was introduced in Davis v. Department of Labor & Indus., 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), which held that a state compensation act could be applied in cases in which workers "occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." In effect the "twilight zone" rule allowed workers to elect the forum in cases where the proper forum was difficult to determine, thus preventing workers from losing rights by choosing the wrong forum.
Concurrent jurisdiction was subsequently recognized in Bethlehem Steel Co. v. Moores, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1948), which held that a state compensation act could be applied in the case of an injury incurred in ship repair, an activity which had been classified as federal under the "maritime but local" test. In fact, the Supreme Court has not denied application of state compensation laws on grounds related to the "local concern" doctrine since shortly after the original federal act was passed.
Furthermore, in the 1960's the Supreme Court probably wrote out the "may not validly be provided by State law" limitation of the original Section 3, holding in Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), (without overruling Davis) that the act always applies when the injury occurs on navigable waters, and in Nacirema Operating Co. v. Johnson, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969), that the act never applies when the injury does not occur on navigable waters.[3]
The 1972 Amendments
The federal act was originally designed to provide compensation to those employees who could not constitutionally be covered by state acts. Various periods of uncertainty ensued, and finally the federal line was drawn in recent decisions at the water's edge, thus limiting federal coverage for certain longshoremen and harbor workers to only the parts of their working days spent over water.
In 1972 Congress accepted the invitation in the Nacirema opinion to "move the line landward" and included this extension of jurisdiction in a comprehensive revision of the federal act. In reporting on this phase of the legislation, the House Committee on Education and Labor observed:
"The present Act, insofar as longshoremen and ship builders and repairmen are concerned, covers only injuries which occur `upon the navigable waters of the United States.' Thus, coverage of the present Act stops at the water's edge; injuries occurring on land are covered by State Workmen's Compensation laws. The result is a disparity in benefits payable for death or disability for the same type of injury depending on which side of the water's edge and in which State the accident occurs.
"To make matters worse, most State Workmen's Compensation laws provide benefits which are inadequate; even the *249 better State laws generally come nowhere close to meeting the National Commission on State Workmen's Compensation Law recommended standard . . . ."
The report concluded:
"The Committee believes that the compensation payable to a longshoreman or a ship repairman or builder should not depend on the fortuitous circumstance of whether the injury occurred on land or over water. Accordingly, the bill would amend the Act to provide coverage of longshoremen, harbor workers, ship repairmen, ship builders, shipbreakers, and other employees engaged in maritime employment (excluding masters and members of the crew of a vessel) if the injury occurred either upon the navigable waters of the United States or any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other area adjoining such navigable waters customarily used by an employer in loading, unloading, repairing, or building a vessel.

"The intent of the Committee is to permit a uniform compensation system to apply to employees who would otherwise be covered by this Act for part of their activity." (Emphasis supplied) 3 U.S.Cong. & Adm.News `72' #56 (p.4707-8)

III
Referring to this stated intention, Equitable contends that Congressional enactment of the recommended legislation indicates, at least by implication, the intention for preemption by the new federal act.
While the 1972 amendments extended federal law under the admiralty power into an area which was formerly subject only to state regulation, the extension does not automatically terminate the state's power of regulation. As stated in Askew v. American Waterways Operators, Inc., 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973), in reference to the Admiralty Extension Act:
"Even though Congress has acted in the admiralty area, state regulation is permissible, absent a clear conflict with the federal law."
Thus, state power was not pre-empted unless it was the clear and manifest purpose of Congress to do so or unless the exercise of dual authority is repugnant to the Congressional objective.
We believe the history and wording of the 1972 amendments do not reasonably evidence Congressional intent to preclude applicability of state compensation laws in the extended area. The principal concern of Congress was that the federal act would always apply to these particular employees, not that the state act might sometimes apply.[4] The "uniformity" desired was for adequate minimum benefits, payable to those employees engaged in maritime employment who previously were sometimes in and sometimes out of federal coverage. Congress sought uniform applicability, not uniform and exclusive applicability.
Under the amended act these particular employees are now assured benefits at a level deemed adequate by the Congress. Achievement of this purpose, however, does not require exclusion of state power to provide a more favorable remedy. Congress neither had nor should have had any compelling concern as to whether some states might provide greater benefits under some situations, as long as there was no double *250 recovery. On the other hand, a state has a legitimate interest in applying its compensation laws to injuries incurred within its jurisdiction.
Equitable argues, however, that the elimination of the "may not validly be provided by State law" limitation evidenced the Congressional intent that state law cannot operate in areas where the federal act applies. We disagree.
That limitation led to the original conclusion that the then-new federal system and the existing state system were mutually exclusive. Elimination of the unworkable limitation from the newly-renovated federal system is therefore a stronger argument for concurrent jurisdiction than for exclusive federal jurisdiction. Gilmore & Black, Law of Admiralty 425-426 (2d ed. 1975).[5] Furthermore, the limitation had already effectively been written out by judicial decisions, as previously noted.
Nor can we say that the Congresional action was so pervasive as to compel the conclusion that state law could no longer operate within the expanded territorial limits. Indeed, academic discussion of the expanded jurisdiction has suggested that concurrent jurisdiction is the only workable policy, the following being particularly pertinent:
"On grounds of policy it seems undesirable in the highest degree to construe the amendments as having reintroduced the idea that the federal and state compensation systems are mutually exclusive. That had of course been the construction given to the 1927 Act under the `may not validly be provided by state law' limitation. That construction led to the horrors of the `maritime but local' period, from which the Supreme Court rescued us by the invention of the twilight zone in the 1942 Davis case. The twilight zone has its own difficulties, conceptual and otherwise, but, in practice it seems to have worked reasonably well. Indeed, a theory of concurrent jurisdiction (whether it is called a twilight zone or something else) seems to be the only sensible way of dealing with state and federal statutes which meet at some vaguely defined line. If LHCA is taken to be exclusive up to its new territorial limits, injured maritime workers will have to guess at where the new line (piers, wharves and so on which `adjoin' navigable waters) is located just as such workers during the 1930's and early 1940's had to guess at where the `maritime but local' line was located. Eventually the Supreme Court would no doubt find the resulting situation intolerable, and would rescue us once again by establishing a new theory of concurrent jurisdiction. But there seems to be no good reason why we should be condemned to relive the depressing episode of the 1927-1942 `maritime but local' LHCA case law.
* * * * * *
"If we assume a concurrent jurisdiction (or twilight zone) solution to the problem, what are its limits to be? The pre-1972 twilight zone involved the seaward extension of the coverage of state statutes, not (at least after the Nacirema case) the landward extension of the coverage of LHCA. If the only purpose of twilight zone theory is to make it unnecessary for claimants to guess at the precise location of an invisible line, that purpose will be served by locating the post-1972 *251 twilight zone at the outer limits of the landward extension of LHCA. Under that approach workers injured at or near the `adjoining navigable waters' line should be entitled to claim under either the state or the federal act. We have already suggested that `adjoining' should be broadly construed with respect to claims under LHCA; adoption of a twilight zone approach would allow both the deputy commissioner and his state counterpart to operate on both sides of the line."[6] (Emphasis supplied, footnotes omitted) Gilmore & Black, Law of Admiralty 425-426 (2nd ed. 1975).
Neither can § 905(a) support Equitable's contention that the 1972 amendments required exclusive federal jurisdiction.[7] First, § 905 was not amended in 1972, but has existed in its present form since 1927 and has not barred state remedies in concurrent jurisdiction cases. More importantly, the exclusivity language of § 905(a) is merely a statement of the basic compensation theory that an employer who is statutorily obligated for compensation benefits is likewise statutorily absolved from tort liability. Obviously, the "exclusive" liability language of § 905(a) cannot reasonably be interpreted to preclude resort to the state compensation system in a concurrent jurisdiction situation. See Industrial Commission v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), in which an employee, after receiving compensation under Illinois law which contained a similar exclusivity provision, was allowed to receive a supplemental award in Wisconsin.
Finally, we cannot determine that there is such a conflict between the federal and state acts that the two acts cannot consistently stand together. Certainly there is no physical impossibility for application of concurrent jurisdiction (at least, not as to the issues raised in this case). Furthermore, while there may be some areas of conflict between the two systems, these are not such as to compel a total divestiture of state power.
We conclude that Congressional enactment of the 1972 amendments to the federal act did not absolutely pre-empt the power of the states to provide a compensation system for injuries occurring on land within the state.
For these reasons, the judgment of the trial court is set aside, and the case is remanded for further proceedings. Costs of this appeal are assessed to defendant.
SET ASIDE AND REMANDED.
NOTES
[1] For a challenge to the constitutionality of this legislative power, see Halter Marine Fabricators, Inc. v. Nulty, No. 75-2317, presently pending in the U.S. Court of Appeals for the Fifth Circuit.
[2] The emphasized portion of Section 3 was omitted when the section was amended in 1972. See § 903(a), quoted supra.
[3] See Larson, Workmen's Compensation § 89.20 (Desk ed. 1973), for a detailed discussion of the evolution of the applicable rules prior to the 1972 amendments.
[4] "The purpose of expanding federal coverage was to insure a substantial remedy. In light of the confusion likely to arise as to the coverage of the amended Act, it would seem contrary to this purpose to force an injured employee to seek compensation under the state or federal scheme, only to be told his guess was incorrect. Dual coverage would seem to aid rather than hinder this function. The employer is in no way disadvantaged, as the cost of insuring for both acts is minimal and double recovery would of course not be allowed." (Footnotes omitted) Watson, Broadened Coverage under the LHWCA, 33 La.L.Rev. 683, 695 (1973).
[5] The authors argued:

"The case for construing the amendments to provide for concurrent state and federal jurisdiction is strengthened by the fact that § 903(a), as revised, no longer contains the `may not validly be provided by state law' limitation. It was that limitation which led to the original conclusion that the new federal system and the existing state system were to be mutually exclusive. Its deletion leaves the statute blank on the relationship of the expanded federal system to the state system. A vague idea of `federal preemption' should not lead us to the unfortunate and unnecessary conclusion that the state statutes can now operate only up to (and never beyond) the newly demarcated federal line."
[6] The term "twilight zone" has devoloped a different meaning from the original usage, now connoting generally an area of concurrent jurisdiction.
[7] § 905(a) reads in pertinent part:

"§ 905.
"(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. . . ."