541 So.2d 182 (1989)
John LOGAN
v.
LOUISIANA DOCK COMPANY, INC., et al.[*]
No. 88-C-1506.
Supreme Court of Louisiana.
January 30, 1989.
Dissenting Opinion February 6, 1989.
On Rehearing April 14, 1989.
Concurring on Rehearing April 17, 1989.
Concurring on Rehearing May 4, 1989.
*183 Frank A. Bruno, Bruno & Bruno, New Orleans, for applicant.
Charles N. Branton, Fred E. Salley, Salley & Associates, New Orleans, for respondents.
Dissenting Opinion of Justice Lemmon February 6, 1989.
Concurring Opinion of Justice Calogero on Rehearing April 17, 1989.
Concurring Opinion of Justice Dennis on Rehearing May 4, 1989.
For Opinion of Justice Lemmon concurring in decision on Partial Rehearing, See 543 So.2d 1336.
COLE, Justice.
Plaintiff John Logan (Logan) brought this action in the Civil District Court for the Parish of Orleans seeking workers' compensation benefits for injuries sustained in the course of his employment with defendant Louisiana Dock Co., Inc. (Louisiana Dock). The trial court entered judgment for Logan and the defendants appealed. The Court of Appeal, Fourth Circuit, reversed.[1] The appellate court held the trial court lacked jurisdiction over Logan's claim, finding exclusive federal jurisdiction existed under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), codified at 33 U.S.C. § 901 et seq. We granted certiorari[2] to review the jurisdictional issue and now reverse the Court of Appeal.

ISSUES
Because of Louisiana Dock's failure to seek protective writs to preserve its other errors assigned below, a single question is properly before us:
Whether the trial court had subject matter jurisdiction over Logan's claim under state workers' compensation law or whether his state claim is preempted by the federal LHWCA.

FACTS
The facts pertinent to our jurisdictional inquiry are not in dispute. Logan injured his right knee on November 7, 1985 while employed by Louisiana Dock as a welder. The injury occurred while Logan was performing repairs to a barge on the company's dry docks located in the Mississippi River at New Orleans. He sought and obtained medical attention, including surgery on his knee and was subsequently released to return to work. Logan continued to complain of pain in his knee and was ultimately discharged by Louisiana Dock. He brought this action in the Civil District Court for the Parish of Orleans, seeking compensation under Louisiana workers' compensation laws.[3] Louisiana Dock answered, challenging the jurisdiction of the trial court and asserting other defenses. After trial on the merits, the trial court awarded Logan temporary total disability benefits. The Louisiana Court of Appeal for the Fourth Circuit reversed and the matter is now before us on Logan's application for writ of certiorari.

*184 ANALYSIS
A. Federal Jurisdiction
On the facts established below, there is no question Logan's injuries are compensable under the federal LHWCA. At the time he was injured, Logan was working in a dry dock and engaged in ship repair. In 33 U.S.C. § 902(3), the term "employee" is defined to include "any harbor worker including a ship repairman...." The coverage of the Act extends to an "employee" injured "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock...." 33 U.S.C. § 903(a). Thus, Logan meets both the "status" and "situs" requirements for recovery under the LHWCA.
B. Concurrent Jurisdiction
The availability of a federal remedy does not necessarily foreclose Logan's claim for relief under state law. Absent federal preemption, Louisiana is free to extend Logan the protection of its workers' compensation laws. It is well established that federal preemption of state laws will not be found without a clear expression of Congressional intent, and there is a strong presumption against finding preemption. See, e.g., Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); and Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). In Askew v. American Waterways Operators, Inc., 411 U.S. 325, 341, 93 S.Ct. 1590, 1600, 36 L.Ed.2d 280 (1973), the Court stated: "Even though Congress has acted in the admiralty area, state regulation is permissible, absent a clear conflict with the federal law." The U.S. Supreme Court has also noted that in cases of doubt concerning the applicability of state compensation law relative to the LHWCA, the question should be resolved in favor of the constitutionality of the state remedy. See Director, Office of Workers' Compensation Programs, United States Department of Labor v. Perini North River Associates, 459 U.S. 297, 309, 103 S.Ct. 634, 643, 74 L.Ed.2d 465 (1983) (hereafter Perini). With these presumptions in mind, we turn to the applicable law.
1. Statutory Interpretation
We note the LHWCA, as amended, contains no express declaration of Congressional intent to prohibit states from providing compensation to injured workers in lieu of, or in addition to, the benefits provided under the LHWCA. In fact, the 1972 amendments to 33 U.S.C. § 903(a) eliminated existing language in the statute that pointed to exclusivity.[4] Referring to this change, the U.S. Supreme Court observed in Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980): "It would be a tour de force of statutory misinterpretation to treat the removal of phrasing that arguably establishes exclusive jurisdiction as manifesting the intent to command such exclusivity." Id at 720-721, 100 S.Ct. at 2436-2437 (emphasis in original). In addition, 33 U.S.C. § 903(e), which provides for the crediting of amounts paid under "any other workers' compensation law" against an employer's liability under the LHWCA, implies Congress envisioned the existence of parallel state remedies.
More problematic is the language of 33 U.S.C. § 905(a) which states: "The liability of an employer prescribed in Section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee...." However, the argument § 905 precludes concurrent state remedies was considered and rejected in Sun Ship. See 447 U.S. at 722, 100 S.Ct. at 2437.[5] *185 Finally, the legislative history of the 1972 amendments to the LHWCA reveals no evidence of Congressional intent to preempt state law and create exclusive federal jurisdiction.[6]
Louisiana Dock contends the 1972 amendments to the LHWCA, which extended the act's protection to maritime workers shoreward of the water's edge, were designed to create a uniform compensation system. See Perini, 459 U.S. at 318, 103 S.Ct. at 647. We agree that Congress wished to provide a uniform, minimum level of compensation for injured workers. It also wished to avoid the problem of harbor workers walking in and out of federal coverage in going between a pier and a ship. See Nacirema Operating Co. v. Johnson, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969); see also H.R.Rep. No. 1441, 92d Cong., 2d Sess. 10, reprinted in 1972 U.S. Code Cong. & Ad.News 4698, 4708. However, the desire of Congress to provide a uniform, minimum level of protection does not require us to imply Congressional intent to preempt the field and to forbid the states from offering injured workers comparable or greater benefits. The absence of preemptive language in the statute and its history militates in favor of finding concurrent jurisdiction, particularly in light of the presumptions against finding preemption noted above.
We find the Court of Appeal clearly erred in finding preemption is mandated by the LHWCA. This holding is contrary to the statutory language itself as well as the intepretation of the statute by the U.S. Supreme Court in Sun Ship. The appeals court erroneously relied on the U.S. Fifth Circuit's opinion in Texas Employers Insurance Ass'n v. Jackson, 820 F.2d 1406 (1987). (hereafter T.E.I.A.). The panel's decision in T.E.I.A. was vacated by a grant of rehearing en banc and is without precedential authority. 828 F.2d 1 (5th Cir. 1987); Griffis v. Gulf Coast Pre-Stress Co., Inc., 850 F.2d 1090 (5th Cir.1988) at 1092. In its opinion on rehearing en banc, the Fifth Circuit retreated somewhat from the sweeping dicta relied on by the Court of Appeal. 862 F.2d 491 (5th Cir.1988). We find nothing in the text of the LHWCA itself to support the broad preemption claims of the Fourth Circuit below: state and federal compensation laws are complimentary, not contradictory;[7] there is no evidence in the LHWCA of Congressional intent to preempt state law; and, as noted above, § 905 was designed not to preempt state remedies but to abolish non-LHWCA federal claims by injured longshoremen. Our conclusion that concurrent jurisdiction is the better rule is supported by the scholarship on this question.
2. Scholarship
Scholarly commentators are somewhat divided on the question of whether Congress, in passing the LHWCA, intended to preempt the field of compensation benefits for injured harbor workers and longshoremen. Certain scholars have argued the comprehensive nature of the LHWCA points to Congressional intent to occupy the entire field and impose nationwide uniformity of remedies for injured longshoremen.[8] A clear majority of the commentators, however, find concurrent jurisdiction is the better rule for a variety of legal and policy reasons. We agree.
As a policy matter, it would be "undesirable in the highest degree" to return to the notion that federal and state jurisdiction over claims such as Logan's are mutually *186 exclusive. See Gilmore and Black, supra, at 425. Concurrent jurisdiction over certain maritime-related injuries eliminates guesswork as to the injured employee's choice of forum; no injured employee can fall through a jurisdictional crack.[9] Louisiana has a very important interest in assuring that its land-based citizens, like Logan, who work in hazardous maritime-related activities, are fully compensated for their injuries. Concurrent jurisdiction avoids the anomalous and undesirable situation of an injured harbor worker receiving less compensation than his injured colleague on shore.[10] Finally, application of a concurrent state remedy for an employee like Logan does no harm to the federal benefits "floor" provided by the LHWCA. Accordingly, we find concurrent jurisdiction is the better rule and should be applied to the fullest extent permissible.
3. Federal Jurisprudence
In ascertaining the current state of federal law governing the parameters of concurrent jurisdiction in this case, an ounce of history is worth several pounds of logic.[11] In its 1917 decision in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, the Supreme Court held the states could not constitutionally apply their workers' compensation laws to maritime injuries.[12] In 1927, Congress enacted the LHWCA which provided a federal remedy for maritime workers who were barred by Jensen from recovering under state law. Thus, two mutually exclusive jurisdictional spheres were created, but the precise boundary of the two was difficult to determine in individual cases. The result was the recognition of a "twilight zone" at the border of the two spheres.[13] Within this "twilight zone," concurrent jurisdiction was recognized.[14] Repair work on a completed vessel, i.e., the type of work Logan was involved in, was within the "twilight zone." See Bethlehem Steel Co. v. Moore, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1948); Baskin v. Industrial Accident Comm'n, 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523 (1949); see also Gilmore and Black, supra, at 421; but see Flowers v. Travelers Ins. Co., 258 F.2d 220 (5th Cir.1958).
Following the 1972 amendments to the LHWCA which extended its reach inland to provide a federal remedy for workers shoreward of the "Jensen line," new questions *187 were raised about the state and federal jurisdiction over injuries to maritime workers. The leading case dealing with the question of concurrent jurisdiction in light of these amendments is Sun Ship, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). The Court of Appeal and Louisiana Dock both place great emphasis on Sun Ship's reference to "land-based injuries." We are more impressed by the factual similarities. Sun Ship, Inc., like Louisiana Dock, was a shipbuilding and ship repair enterprise. 447 U.S. at 716, 100 S.Ct. at 2434. Like Louisiana Dock, Sun Ship, Inc. was located on a "navigable water of the United States." Id. Like Logan, the Sun Ship plaintiffs were engaged in shipbuilding or ship repair activities. Id. Finally, like Logan, the Sun Ship plaintiffs sought and were awarded state compensation benefits even though they were clearly eligible for benefits under the LHWCA. Id. The Supreme Court affirmed.
In upholding the state benefits award, the Court noted the absence of Congressional intent in the 1972 LHWCA amendments to change the "accepted understanding that federal jurisdiction would coexist with state compensation laws," at least insofar as state law "may constitutionally operate under the Jensen doctrine." Id. at 722, 100 S.Ct. at 2437. The Court of Appeal read the latter phrase as calling for a return to a rigid, water's edge test of jurisdiction. We disagree. Such a rigid interpretation is ahistorical in that it ignores the import of Davis and its progeny noted above. The Sun Ship Court's reference to the "accepted understanding" adopts this post-Jensen jurisprudence. This interpretation is confirmed by Perini, 459 U.S. at 319-320, 103 S.Ct. at 648-649.
We decline to read Sun Ship as narrowly as the Court of Appeal did. The opinion notes the remedial purpose of the 1972 LHWCA amendments, i.e., to aid injured maritime workers. 447 U.S. at 725-726, 100 S.Ct. at 2439. A return to a rigid Jensen analysis and the incumbent jurisprudential disputes it would engender thwarts the remedial purposes of the federal act and the state's interest in compensating injured workers. The U.S. Supreme Court in Sun Ship, Herb's Welding and Perini has consistently resolved jurisdictional questions in favor of providing the injured employee with a remedy under federal law, state law or both,[15] rather than by reconstructing a bright dividing line beyond which state law cannot pass. We cannot read this line of cases as erecting a barrier to Logan's recovery.
Indeed, even under a traditional "twilight zone" analysis of the sort explicitly endorsed by Sun Ship, state jurisdiction would be proper over Logan's injury since dry docks have historically been viewed as extensions of the land. See, e.g. Johnson v. John F. Beasley Construction Co., 742 F.2d 1054, 1063 n. 8 (7th Cir.1984), cert. denied 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985); Bennett v. Perini Corp., 510 F.2d 114, 116 (1st Cir.1975); Cook v. Belden Concrete Products, Inc., 472 F.2d 999, 1001-1002 (5th Cir.1973), cert. denied 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973); Dirma v. United States, Department of the Navy, 695 F.Supp. 714 (E.D.N.Y.1988). The fact that the LHWCA specifies dry docks are to be included in the scope of its coverage indicates Congressional recognition of their traditional status as extensions of the land, not an intent to divest the status of jurisdiction. This is the essence of the holding in Sun Ship; the availability of an LHWCA remedy does not preclude concurrent state coverage.
We disagree with the Court of Appeal's reliance on the U.S. Fifth Circuit's decisions in Flowers v. Travelers Insurance Co., 258 F.2d 220 (1958), cert. denied 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582 (1959); and Noah v. Liberty Mutual Insurance Co., 267 F.2d 218 (1959). These cases reflect the Fifth Circuit's own restrictive reading of the jurisdictional boundaries under *188 the LHWCA. While Flowers involved a situation factually on all fours with the one presented here, the decision does not discuss the historic classification of dry docks as extensions of the land. Noah is factually distinguishable because it involves neither ship repair nor a dry dock. Most importantly, however, these decisions are simply not in keeping with the recent dictates of the U.S. Supreme Court in Sun Ship, Herb's Welding and Perini as discussed above. We decline to follow them.
4. State Jurisprudence
Our interpretation of federal law governing jurisdiction over Logan's injuries is corroborated by our own prior cases dealing with this question. While the Jensen doctrine was rigidly applied by several of this Court's early decisions, our more recent cases have followed the federal trend of attempting to ameliorate its harsh consequences. In the 1957 case of Richard v. Lake Charles Stevedores, 95 So.2d 830 (La. App. 1st Cir.1957), cert. denied 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529 (1958), the First Circuit, in an opinion by then Judge Tate, held state court jurisdiction was proper over the claim of a longshoreman injured in the hold of a vessel moored on navigable waters. In so doing, it followed U.S. Supreme Court rulings permitting state jurisdiction over claims by workers engaged in repairing vessels on navigable waters. 95 So.2d at 831.[16] The holding in Richard is significant for two reasons. First, it obviously lends great support to our decision here. In addition, however, it establishes Louisiana's trend of extending the protection of its workers' compensation laws to the greatest extent permissible.
We find evidence of this trend in subsequent cases.[17] In Umbehagen v. Equitable Equipment Co., 329 So.2d 245 (La.App. 4th Cir.1976), the Fourth Circuit anticipated the Supreme Court's Sun Ship decision, holding state remedies were not preempted by the LHWCA in claims for injuries of land-based employees covered by the federal act. In Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La.1976), we permitted third party negligence actions to proceed under Louisiana law despite the availability of a federal remedy under the LHWCA.[18]
In the 1982 case of Thompson v. Teledyne Movible Offshore, Inc., this court found state subject matter jurisdiction existed over an injury sustained on a drilling platform outside territorial waters, despite the fact Thompson was entitled to LHWCA benefits. 419 So.2d 822 (1982). The "fixed platform" of Thompson is closely analogous to the dry dock, an extension of the land.[19] The state's interest is not less in extending the protection of its law to Logan, injured over inland waters, than to workers injured outside its territorial waters on the Outer Continental Shelf. The facts here warrant a similar finding of subject matter jurisdiction.
In Beverly v. Action Marine Services, Inc., 433 So.2d 139 (1983), this Court again extended the boundaries of concurrent jurisdiction. Beverly died while working on a barge moored in navigable waters. The Third Circuit found federal preemption (422 So.2d 623 (1982)) and this Court reversed. We extended state jurisdiction to afford the *189 deceased's relatives a remedy under state workers' compensation law since none existed under the LHWCA. In attempting to distinguish Beverly, the Court of Appeal makes much of the fact that the Beverly plaintiffs had no federal remedy. We find this reasoning is flawed.
First, Sun Ship indicated the presence or absence of a federal remedy was not dispositive of the question of whether or not state concurrent jurisdiction was proper. Second, the Court of Appeal concluded the "Jensen line" stated a constitutional wall beyond which state jurisdiction could not pass. If this second premise were true, the absence of a federal remedy was irrelevant and Beverly's conclusion is wrong. Only by saying the presence or absence of a federal remedy controls the availability of a state remedy seaward of the "Jensen line" can the Fourth Circuit's reasoning be upheld. We decline to create such a restrictive test. There is no basis for returning to the pre-Davis "bright line" interpretation of Jensen. Nor is there basis for finding, contrary to Sun Ship, that the presence of a federal remedy requires a finding of federal preemption. Here, as in Beverly, we conclude Louisiana workers' compensation law supplements existing federal law and jurisdiction was properly exercised by the trial court.

CONCLUSION
We conclude the trial court's exercise of jurisdiction over Logan's claim was proper under both state and federal law. The Court of Appeal erred in concluding otherwise. Nothing in the language or history of the LHWCA indicates Congressional intent to prohibit the state from offering the protection of its workers' compensation laws to Logan. Here, as in Beverly, the state and federal remedies are complimentary. Concurrent jurisdiction does no harm to the remedial purposes of the LHWCA and Louisiana has an important interest in protecting its citizens injured on its inland waters. We are also persuaded by the arguments of most legal scholars in favor of concurrent jurisdiction on a variety of policy grounds. Finally, Louisiana's exercise of jurisdiction over Logan's injury is proper under a fair reading of Sun Ship and its progeny, as well as under a traditional Davis "twilight zone" analysis since Logan was injured in a dry dock, an extension of the land.
This matter is before us on Logan's application, and Louisiana Dock failed to seek writs in this Court to preserve the other assignments of error it urged in the Court of Appeal. As we said in Roger v. Estate of Moulton, 513 So.2d 1126 (1987) (on rehearing), "a party may not seek to change the judgment below or any part thereof unless he has appealed or petitioned for review." Id. at 1135. Accordingly, we may not consider Louisiana Dock's assignments of error pertaining to Logan's workers' compensation claim.

DECREE
The judgment of the Court of Appeal is reversed and the judgment of the trial court is reinstated.
REVERSED.
CALOGERO, J., concurs in part and dissents in part with reasons.
WATSON, J., also concurs to add the comment that this opinion represents an excellent analysis of a difficult issue.
LEMMON, J., dissents and assigns reasons.
CALOGERO, Justice, concurring in part and dissenting in part.
I concur in the majority's conclusion that plaintiff is entitled to recover under the Louisiana Workers' Compensation Act.
I respectfully dissent, however, from the majority's conclusion that the defendant was required to seek certiorari from a court of appeal judgment entirely in its favor, in order to preserve its argument that even if the Louisiana Worker's Compensation Act provides coverage in this case, the district court's award of benefits was excessive under the facts and should be reduced. The court of appeal, finding that the Louisiana Act did not apply, of course had no reason to reach defendant's *190 alternative argument that the district court's award should be reduced. And in my view, there is no logical or legal reason why defendant, after fully prevailing in the court of appeal, was required to file a "protective" writ application in order to have standing to raise that alternative argument before this Court after plaintiff's writ was granted.
In support of its decision to bar defendant from arguing that the plaintiff's award should be reduced, the majority cites Roger v. Estate of Moulton, 513 So.2d 1126, 1135 (La.1987) for the proposition that "a party may not seek to change the judgment below or any part thereof unless he has appealed or petitioned for review." The fact is, however, that this defendant does not seek and has no reason to seek a change in the judgment below, i.e., the court of appeal's judgment denying plaintiff's claim in its entirety.
Roger is distinguishable. In that case, the majority held that an insurer who appeared in the dual capacity of uninsured motorist carrier and workman's compensation intervenor could not assert its intervention claim in this Court, when it did not seek a writ from the court of appeal judgment which denied both the intervention claim and the injured plaintiff's claim for damages. Whereas in Roger it could be argued that the insurer was required to seek a writ in its capacity as intervenor, even though it was entirely satisfied with a court of appeal judgment which held that it had no exposure in its capacity as uninsured motorist carrier,[1] this defendant had no reason to ask for relief from the court of appeal judgment.
As a result of the majority's ruling, litigants in similar cases who have received a judgment entirely in their favor from the court of appeal will be prompted to seek writs from this Court, out of fear that if they do not do so, and if the party which lost in the court of appeal seeks and obtains a writ grant, and if this Court reverses the court of appeal and gives relief to their opponent, the alternative arguments which they made to the court of appeal will be lost.[2] As noted by Justice Lemmon in his dissenting opinion in this case, this rule serves no purpose. At best, it will result in an unnecessary increase in the volume of writ applications filed with this Court, and at worst it will cause confusion and uncertainty among lawyers and litigants.
LEMMON, Justice, dissenting.
In Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1916), the Court held that states were constitutionally barred from applying state compensation laws to maritime injuries, since Congress had paramount power to fix and determine the maritime law throughout the country.
Congress eventually enacted the Longshoremen's and Harbor Workers' Compensation Act, but the courts struggled with jurisdictional problems of "maritime but local" injuries over navigable waters and of shoreside injuries which nevertheless fell within the range of federal admirality jurisdiction. In 1972 Congress, in order to promote uniformity of benefits to maritime workers who were injured on shore while performing maritime duties, created concurrent federal jurisdiction in such cases. The 1972 amendments to the LHWCA thus extended the act landward beyond the *191 shoreline. However, the amendments did not purport to extend the line for state compensation laws seaward. Indeed, such a seaward extension would have effectively overruled Jensen, something which the Supreme Court had never seen fit to do.
The recent case of Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), which involved a land-based injury as "the single question presented", discussed the effect of the 1972 amendments as to injuries to maritime workers performing maritime duties on shore. The decision observed that the 1972 amendments created concurrent jurisdiction "in that field in which [state compensation law] may constitutionally operate under the Jensen doctrine". Id. at 722, 100 S.Ct. at 2437. Thus, Sun Ship impliedly recognized the continuing validity, after the 1972 amendments, of the Jensen doctrine that state compensation laws may not be applied to injuries to maritime workers over navigable waters.[1]
While I might agree with the majority as a matter of my personal policy preference that "concurrent jurisdiction is the better rule", the overruling of Jensen should be left to the Supreme Court. Sun Ship did not present that issue, and the Court has not yet chosen to overrule Jensen in Sun Ship or any other case.
The majority opinion is in further error on a matter of Louisiana procedural law.
Because defendant failed to seek certiorari from a wholly favorable decision of the court of appeal, the majority forecloses defendant on its alternative argument pertaining to the merits of the benefits claim. This drastic result is neither called for by the Code of Civil Procedure nor required by the Roger decision.[2]
In the present case defendant appealed from the trial court's judgment awarding worker's compensation benefits to plaintiff. On appeal defendant asserted as error the trial court's rulings both on jurisdiction and on the merits of the award of benefits. The court of appeal, by holding the exercise of jurisdiction was improper, was not required to reach the benefits issue. On the basis of one of defendant's alternative arguments, the intermediate court rendered judgment which decreed that plaintiff's suit was dismissed in its entirety.
The majority of this court, after reversing the court of appeal on jurisdiction, in effect holds that defendant is precluded by principles of res judicata from consideration of the alternate issue pertaining to benefits, because defendant had failed to petition for review of the judgment of the court of appeal, a judgment which was one hundred per cent favorable to defendant. The majority, quoting Roger, reasoned that "a party may not seek to change the judgment below or any part thereof unless he *192 has ... petitioned for review". That reasoning was curious in view of the fact there was no part of the "judgment below" in the court of appeal that defendant had any cause to seek to change.[3]
It is the judgment, and not the reasons therefor, from which a party must appeal or seek review in order to change. If a party is fully satisfied with a judgment (whether or not he is satisfied with the reasons), he has no occasion to appeal from or seek review of the judgment. 9 Moore's Federal Practice ¶ 204.11[3] (2d ed. 1948), (quoted in Roger for the proposition that a party must appeal in order to change any part of the judgment below). While a party must appeal or seek review in order to raise issues attacking the judgment below, he need not do so in order to raise alternative arguments supporting the judgment below. Id. at p. 4-46.
Here, although defendant did not raise issues attacking the "judgment below" (because it had no reason to seek to change any part of the intermediate court's judgment), defendant has a live alternative argument which supports dismissing plaintiff's case or reducing his recovery. The appropriate procedure for this court, upon reversing the intermediate court's ruling on jurisdiction (the only issue on which this court granted certiorari), is to remand the case to the intermediate court to consider defendant's alternative arguments for dismissing plaintiff's case or reducing his recovery.[4]
The majority rationale that a defendant who obtains a dismissal of the plaintiff's action on one ground in the court of appeal must seek certiorari in order to preserve any alternative argument for affirming the judgment of dismissal is a useless technicality which constitutes a horrible trap for unwary lawyers.

ON REHEARING APPLICATION
PER CURIAM.
Rehearing is granted for the limited purpose of amending the original opinion and decision with respect to the procedural question of whether this court should remand the case to the court of appeal to review the merits of the controversy. Otherwise, rehearing is denied.
In the original opinion we reinstated the trial court judgment, refusing to review Louisiana Dock's assignments of error as to the merits of the case or to remand the case to the court of appeal for its review of the merits. We cited Roger v. Estate of Moulton, 513 So.2d 1126, 1135 (La.1987) (On Rehearing) which sets forth our basic rule of practice that a respondent may defend a judgment on any ground consistent with the record, even if rejected in the lower court, but he cannot attack the decree with a view either to enlarging his own rights or to lessening the rights of his adversary unless he files an application, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. See also Piper v. Olinde, 288 So.2d 626 (La.1974); Gulotta v. Cutshaw, 283 So.2d 482 (La.1973); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971); Madison v. American Sugar Refining Co., 243 La. 408, 144 So.2d 377 (1962); Pennington v. Justiss-Mears Oil Co., 242 La. 1, 134 So.2d 53 (1961); D.H. Holmes Co. v. Morris, 188 La. 431, 177 So. 417 (1937); and the many cases cited therein; U.S. v. Am. Ry. Express Co., 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1924); Helvering v. Pfeiffer, 302 U.S. 247, 58 S.Ct. 159, 82 L.Ed. 231 (1937); LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355, reh'g denied, 309 U.S. 694, 60 S.Ct. 465, 84 L.Ed. *193 1035 (1940); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3904; 9 Moore's Federal Practice § 204.11[3] (2 ed. 1988).
This basic rule is qualified, however, by another well established rule of practice that in instances where the court of appeal has not had the opportunity, or has found it unnecessary, to review the merits of the controversy under its appellate jurisdiction, it is usually the better practice for this court to remand the case to the court of appeal for such review, even though this court is vested with the power to dispose of the case finally on a writ of review. Mataya v. Delta Life Ins. Co., 222 La. 509, 62 So.2d 817, 819 n. 1 (1953); House of Representatives v. Bernard, 373 So.2d 188, 191 (La.1979); Benoit v. Fireman's Fund Ins. Co., 355 So.2d 892, 897 (La.1978); Smith v. Hartford Accident and Indemnity Co., 254 La. 341, 223 So.2d 826, 829 (1969); Shapiro v. Shapiro, 242 La. 903, 139 So.2d 762 (1962); Felt v. Price, 240 La. 966, 126 So.2d 330, 335 (1961); Thornton v. F. Strauss & Son, Inc., 240 La. 455, 123 So.2d 885 (1960); Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957); Succession of Brower, 228 La. 785, 84 So.2d 191 (1955); Herget v. Saucier, 223 La. 938, 67 So.2d 543 (1953); Board of Com'rs. v. City of New Orleans, 223 La. 199, 65 So.2d 313 (1953); White v. State Farm Mut. Auto Ins. Co., 222 La. 994, 64 So.2d 245 (1953); See Art. V, section 5, La. Const. (1974); State v. Wimberly Jr., 414 So.2d 666 (La.1982); Duffy v. Throwbridge, 335 So.2d 30 (La.1976); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1974); Deposit Guaranty National Bank v. Shipp, 252 La. 745, 214 So.2d 129 (1968); Rigouts v. Larkan, 244 La. 479, 153 So.2d 363 (1963); Farley v. Ryan Stevedoring Co., Inc., 238 La. 1048, 117 So.2d 587 (1960); Thornton v. F. Strauss & Son, Inc., 240 La. 455, 123 So.2d 885 (1960); Donnell v. Gray, 215 La. 497, 41 So.2d 66 (1949); Oil Field Supply v. Gifford Hill & Co., Inc., 204 La. 929, 16 So.2d 483 (1944); Llorens v. McCann, 187 La. 642, 175 So. 442 (1937); Davenport v. Adler, 52 La.Ann. 263, 26 So. 836 (1899).
Accordingly, we now apply both rules of practice to the present case and amend the original decree to provide:

Decree
The judgment of the court of appeal is reversed and the case is remanded to the court of appeal for its review of the merits of the controversy.
REVERSED AND REMANDED TO THE COURT OF APPEAL.
CALOGERO and LEMMON, JJ., concur and assign reasons.
WATSON, J., joins the per curiam and assigns additional concurring reasons:
MARCUS, J., concurs in the per curiam but would also grant on the jurisdictional issue.
WATSON, Justice, Concurring:
I concur in the legal tenets expressed in the per curiam remand to the Court of Appeal to consider the amount of compensation due and certain expenses. However, I express my doubt as to the necessity for remand since reconsideration of these de minimis matters will probably devour fees, costs and expenses far in excess of their value. The court's discretion extends to deny a remand, thus concluding the litigation even though there are negligible issues which were not considered by the Court of Appeal.
Principally I concur to emphasize the correctness of the majority opinion which recognizes the demise of the Jensen[1] doctrine as involved here. This 1917 rule has been laid to rest by later decisions, notably Davis[2] and Calbeck[3], all as summarized *194 most recently in Perini[4].
Perini held that a worker engaged in marine construction upon navigable waters met the situs and status requirements of the LHWCA, as does the present plaintiff. Perini reviewed the history of United States Supreme Court jurisprudence on the LHWCA noting the jurisdictional dilemma which had been faced under Jensen. In 1942 Davis introduced a "twilight zone" of concurrent jurisdiction. Calbeck then "created further overlap between federal and state coverage."[5]Calbeck abandoned the maritime but local doctrine in favor of ensuring a compensation remedy, federal or state.
According to Perini, Calbeck and Davis eliminated mutually exclusive spheres of jurisdiction, a spectre this court would help resurrect if it relied exclusively on Jensen.
Sun Ship[6] said federal jurisdiction, extended in 1972, supplements but does not supplant state law.
The dissent in Perini makes it crystal clear that the United States Supreme Court has abolished exclusive federal jurisdiction in this area:
"Whatever force the Jensen rule may once have had, it is now perfectly clear that a shore-based worker who is normally covered by a state compensation program may still recover state benefits even though he is injured over navigable waters. Surely no Member of this Court would question the fact that the construction worker injured in this case could have received a state award even though he was on a barge in the Hudson River when he was injured." 459 U.S. at 339-40, 103 S.Ct. at 658-59.
Therefore, I respectfully concur.
CALOGERO, Justice, concurring in partial rehearing grant with per curiam
I fully agree with the majority's decision to remand this case to the court of appeal for consideration of defendant's alternative arguments. I also agree with the majority's implicit recognition that our opinion on original hearing was wrong when it held that "we may not consider" defendant's alternative arguments in light of our holding in Roger v. Estate of Moulton, 513 So.2d 1126, 1135 (La.1987) that "a party may not seek to change the judgment below or any part thereof unless he has appealed or petitioned for review."
I write separately because I am not entirely in agreement with the reasoning used by the majority opinion on rehearing. The majority suggests that our decision to permit defendant to urge its alternative arguments on remand is discretionary, and made pursuant to two "rules of appellate practice." The majority indicates that by not filing a writ application to urge its alternative arguments, defendant violated the first rule, which is that a party seeking to modify the judgment of the court below must appeal or file a writ. Nevertheless, the majority concludes that the defendant falls into an exception or qualification to the first rule, and is permitted to urge its alternative arguments on remand under a second rule of appellate practice which provides that upon reversing a court of appeal judgment, we will remand cases to the court of appeal for consideration of issues which the court of appeal pretermitted on original hearing.
In principle, I do not disagree with the rules of appellate practice articulated by the majority. In my view, however, the issue considered on rehearing is simply and logically resolved by recognizing that the first rule (a party seeking to alter a judgment of the court below must file a writ) is not applicable to this defendant. The defendant was satisfied with the judgment below (i.e., in the court of appeal), as that judgment dismissed the case against it. No party ever has cause to "modify" or *195 "alter" a judgment that is totally in its favor, and it is impossible for a defendant that has been dismissed from a lawsuit by a judgment to "attack the decree with a view either to enlarging his own rights or to lessening the rights of his adversary."
This defendant, which had no need to seek a writ from a judgment which dismissed it from the lawsuit, violated no rule of appellate practice by not seeking a writ. Thus there is no need to base our decision to remand the case to the court of appeal on an exception to a rule of appellate practice that is not even applicable to this case.
Though the majority couches its discussion in terms of discretionary rules of appellate practice, the underlying issue here is one of finality of judgments. If a judgment is rendered and a party desires to change that judgment but does not file an appeal or seek a writ, that judgment will become definitive against the non-appealing party. See La.Code of Civ.Proc. arts. 1842 & 2166. If a party which desires to modify a court of appeal judgment does not file a writ, we cannot, through exercise of our discretion or otherwise, consider that party's arguments that the judgment should be altered in its favor, for in the absence of a writ application the judgment below becomes definitive.
On the other hand, when a party appears before us as appellee, raising alternative arguments which do not seek to change the judgment below, we must either consider those arguments, or as here, remand the case to the court of appeal so that the appellate court may consider issues that it pretermitted on original hearing.
That is why the dissenters in Roger v. Estate of Moulton, supra believed that the majority opinion in that case was wrong when it effectively denied Liberty Mutual any appellate review of the district court's denial of its worker's compensation intervention claim. Though perhaps, as discussed in my dissent to the opinion on original hearing in this case, the result reached in Roger can be limited to the unique factual situation which existed there (one party appearing in separate, adverse capacities), the fact remains that Liberty Mutual was denied the right to have its intervention claim heard under the first rule (that a party seeking to alter the judgment of the court below must file a writ), and not given the benefit of the second rule created by the majority in this case (that the case will be remanded to the court of appeal for consideration of pretermitted issues). For in Roger, the issue of whether Liberty Mutual was entitled to recover on its intervention claim was pretermitted by the court of appeal. See Roger v. Estate of Moulton, 494 So.2d 1226, 1234 & 1238 (La. App.3rd Cir.1986).
For these reasons, I respectfully concur in the majority's opinion on rehearing.
DENNIS, Justice, assigning additional reasons.
I join fully in the per curiam opinion. Furthermore, I respectfully disagree with my brother, Justice Calogero. In my opinion, the well settled rule of this court calls for it to remand the case when the court of appeal has not had the opportunity, or has found it unnecessary, to review "the merits of the controversy", not when any issue in the case has been pretermitted by the court of appeal. By the same token, this court's refusal to remand in Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987), was a correct application of the rule because the merits of the controversy had been fully adjudicated by the court of appeal.
NOTES
[*] Editor's Note: This opinion was originally published at 538 So.2d 200. It is published here as corrected.
[1] 526 So.2d 428 (1988).
[2] 531 So.2d 462 (1988).
[3] It appears from the record that Logan is also pursuing a federal claim for benefits as well. See Exhibits attached to original brief for the plaintiff at 69-77 (No. 88-C-1506). There is, however, no chance of Logan recovering reduplicative benefits for his injury. See 33 U.S.C. § 903(e).
[4] See the discussion in G. Gilmore and C. Black, The Law of Admiralty 425-426 (1975) (hereafter Gilmore and Black).
[5] The 1972 amendments to § 905 were designed to address the completely different problem of third party actions by longshoremen for unseaworthiness and actions by vessels against stevedores for indemnity. See Gilmore and Black, supra, at 446-455; see also Boudreaux v. American Workover, Inc., 680 F.2d 1034 (5th Cir. 1982); Price v. Zim Israel Navigation Co., Ltd., 616 F.2d 422 (9th Cir.1980).
[6] This history is discussed at length in Sun Ship, 447 U.S. at 721-722, 100 S.Ct. at 2436-2437, and Perini, 459 U.S. at 313-323, 103 S.Ct. at 645-650. Gilmore and Black note that the legislative history of the 1972 amendments does not discuss the pre-1972 case law permitting the seaward extension of state compensation laws. On the other hand, the history discusses specific cases it seeks to overrule dealing with recovery for unseaworthiness by longshoremen. Gilmore and Black, supra, at 425.
[7] The U.S. Supreme Court said as much in Herb's Welding Inc. v. Gray, 470 U.S. 414, 417 n. 3, 105 S.Ct. 1421, 1424 n. 3, 84 L.Ed.2d 406 (1985) (hereafter Herb's Welding).
[8] See Steeg, The Exclusivity of Federal Longshoremen's Compensation after the LHWCA Amendments of 1972, 10 J.Mar.L. & Com. 395, 404-409 (1979) (hereafter Steeg); see also Comment, Journey into the Twilight Zone, 23 Loy.L. Rev. 504 (1977).
[9] See Larson, The Conflict of Laws Problem Between the Longshoremen's Act and State Workmen's Compensation Acts, 45 S.Cal.L.Rev. 699, 736-738 (1972); Note, Admiralty-Longshoremen-Application of State Workers' Compensation Scheme to Longshoremen's Injury, Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), 5 Suffolk Transnat'l L.J. 263, 270-272 (1981), (hereafter Note, Admiralty).
[10] This situation is discussed in Steeg, supra, at 405-409. As the U.S. Supreme Court observed in Sun Ship, Congress was not concerned about "a disparity between adequate federal benefits and superior state benefits." 447 U.S. at 724, 100 S.Ct. at 2439. Rather, Congress sought to create a guaranteed minimum benefit for injured workers and to raise the level of those benefits. See Note, Admiralty, supra, at 269-270; P.C. Pfeiffer Co., Inc. v. Ford, 444 U.S. 69, 73 n. 3, 100 S.Ct. 328, 332 n. 3, 62 L.Ed.2d 225 (1979). Under concurrent jurisdiction, the LHWCA can fulfill its intended function of affording injured maritime workers a remedy, yet the worker is free to look to state law if it affords more desirable benefits.
[11] See generally Gilmore and Black, supra, at 404-430; D. Robertson, Admiralty and Federalism 202-221 (1970) (hereafter Robertson); Sun Ship, 447 U.S. at 717-721, 100 S.Ct. at 2434-2437, for a discussion of the history of the law governing compensation of injured longshoremen.
[12] This decision created the so-called "Jensen line," the line formed by the edge of a navigable waterway beyond which state compensation laws could not pass. The Court's reasoning and result prompted a bitter dissent by Justice Holmes. 244 U.S. at 218 et seq., 37 S.Ct. at 530 et seq.
[13] See Davis v. Department of Labor and Industry, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246 (1942) (hereafter Davis). This "twilight zone" was also complicated by the "maritime but local" exception developed by the Court in the 1920's. See Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922). This development is discussed in Gilmore and Black, supra, at 418 et seq. and Robertson, supra, at 205 et seq.
[14] Davis, 317 U.S. at 256, 63 S.Ct. at 229. See also Note, Herb's Welding v. Gray: "Maritime Employment" Remains Undefined, 6 Pace L.Rev. 311, 317 (1986).
[15] See Purnell v. Nomed Shipping B. V., 804 F.2d 248 (3d Cir.1986) (opinion sur denial of petition for panel rehearing) ("Indeed, the Supreme Court has held that states may confer workman's compensation benefits on harborworkers even though Congress has conferred similar benefits on most such workers.")
[16] Bethlehem Steel Co. v. Moore, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1948) and Baskin v. Industrial Acc. Comm., 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523 (1949).
[17] A notable exception is Ellis v. Travelers Ins. Co., 241 La. 433, 129 So.2d 729 (1961), which was relied upon by the Court of Appeal. It did not overrule Richard, but based its finding of no jurisdiction largely on the Fifth Circuit's decisions in Flowers and Noah which we herein declined to follow. It is also factually distinguishable since Ellis was not injured while working on a vessel in a dry dock. A similar rationale prevailed in Wixom v. Travelers Ins. Co., 357 So.2d 1343 (La.App. 4th Cir.1978). There, the Court of Appeal also found Flowers controlling. Like Ellis, it is factually distinguishable. We find both cases reflect an anomalous and overly restrictive view of concurrent jurisdiction and decline to follow them.
[18] The Fourth Circuit misstates the rule of Poche in its opinion. See 526 So.2d at 430.
[19] In Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), the Supreme Court characterized fixed drilling rigs as islands. See also Herb's Welding, 470 U.S. at 421-422, 105 S.Ct. at 1426-1427.
[1] For the reasons set forth in my dissenting opinion in Roger, 513 So.2d at 1137, I believe the majority erred by requiring the insurer to file a "protective" writ in that case. Of course, Roger remains binding precedent until or unless it is reconsidered by a majority of this Court, but the point here is that the facts of this case are distinguishable from Roger.
[2] Most writ applications to this Court are submitted shortly before the deadline for filing, often on the last day of the filing period. Thus, parties successful in the court of appeal usually will not be in a position to wait and see whether the unsuccessful party will seek a writ before they themselves file a "protective" writ. This timing problem is avoided at the appellate level because La.Code Civ.Proc. art. 2133 allows the appellee to answer an appeal (to seek modification, revision or reversal of the trial court judgment) after the delays for filing an appeal have expired. There is no similar provision in the Louisiana Code of Civil Procedure or the rules of this Court for the filing of an answer to writ applications.
[1] The Sun Ship decision further noted that, as to the three jurisdictional spheres prior to 1972, "Jensen commanded that nonlocal maritime injuries fall under the LHWCA". The 1972 amendments did not attempt to alter the jurisdictional sphere of nonlocal maritime injuries (into which the present case falls), and the Sun Ship decision did not suggest any change.
[2] The Roger case involved several suits. In one, Liberty Mutual Insurance Company, as plaintiff's employer's worker's compensation carrier, sued for reimbursement of compensation benefits and medical expenses paid to the plaintiff. In another, the plaintiff sued Liberty Mutual as his employer's uninsured motorist carrier. Liberty Mutual was represented by separate counsel in each case. The trial court rendered judgment in the consolidated matters holding Liberty Mutual liable as UM carrier, but rejecting its demand for reimbursement, acknowledging that Liberty Mutual could sue itself (as UM carrier) for reimbursement.

Liberty Mutual filed separate appeals in each capacity. The court of appeal reversed, holding that Liberty Mutual was not liable as UM carrier. Because the court dismissed the plaintiff's suit in its entirety, it was not necessary to reach the issue of Liberty Mutual's reimbursement claim, since there was no liable party from whom reimbursement could be sought.
This court, on the plaintiff's application, reversed and held Liberty Mutual liable as UM carrier. Because Liberty Mutual had not sought certiorari, this court refused to consider Liberty Mutual's claim for reimbursement. That decision, although wrong in my view, can clearly be distinguished from the present case because Liberty Mutual appeared in two different capacities and did not seek review, in its capacity as worker's compensation carrier, of the court of appeal judgment which denied both the plaintiff's claim for damages and Liberty Mutual's interrelated claim for reimbursement.
[3] It was only necessary for defendant to obtain dismissal in the court of appeal on the basis of one of its arguments. Indeed, if the court of appeal had simply dismissed plaintiff's suit in a memorandum decision without giving reasons, defendant would not have known which, if any, of its arguments that the decision turned on and which (under the majority's reasoning) it was necessary to seek certiorari in order to preserve.
[4] This court, upon reversing an intermediate court's judgment which dismissed a plaintiff's suit based on a determination of no liability on the defendant's part, routinely remands the case to the court of appeal to consider quantum, an issue not previously reached by the intermediate court.
[1] Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).
[2] Davis v. Department of Labor and Industries, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942).
[3] Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962).
[4] Director, OWCP v. Perini North River Assoc., 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983).
[5] 459 U.S. at 309, 103 S.Ct. at 643.
[6] Sun Ship, Inc. v. Commonwealth of Pennsylvania, et al, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed. 2d 458 (1980).